2003 VT 1

## State of Vermont v. Jorge Velez

[819 A.2d 712]

No. 02-082

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed January 3, 2003

24

*Stuart G. Schurr*, Department of State's Attorneys, Montpelier, for Plaintiff-Appellant.

*John C. Mabie* of *Gale, Corum & Mabie*, Brattleboro, for Defendant-Appellee.

¶ 1. **Johnson, J.** The State takes this interlocutory appeal, pursuant to V.R.A.P. 5(b)(1), from a Windham District Court decision granting defendant Jorge Velez's motion to suppress his evidentiary breath test results. Defendant argued that he was deprived of the right to counsel that 23 V.S.A. § 1202(c) establishes for DUI detainees because the on-call public defender contacted by the arresting officer refused to speak with him. In light of this Court's decision in *State v. Gilman*, 173 Vt. 110, 787 A.2d 1238 (2001), the district court granted defendant's motion to suppress on the grounds that even if the police act reasonably, the State denies the detainee's right to counsel if the public defender's office does not comply with its statutory mandate to provide twenty-four hour legal assistance to DUI suspects. We affirm.

¶ 2. On February 4, 2001, defendant was stopped for drunk driving. During the course of processing defendant for driving under the influence (DUI), Vermont State Trooper Matthew Nally read defendant the standard "implied consent" processing form used for DUI stops that explains the rights that detainees have when asked by Vermont law enforcement officials to submit to a breath test. The information provided to DUI detainees operates as a supplement to the *Miranda* warnings, explaining the implications of Vermont's implied consent and criminal refusal laws. See *State v. Morale*, 174 Vt. 213, 219, 811 A.2d 185, 189-90

(2002). Vermont's "implied consent" warning, as read to defendant by the processing officer, includes the following standard language: "You have the right to talk with a lawyer before deciding whether or not to submit to a test. If you want a lawyer a Public Defender will be contacted for you at the state's expense, regardless of your income, or an attempt will be made to contact an attorney of your choice at your expense."

¶ 3.   Defendant told the officer that he understood these rights and that he wished to consult with an attorney before making his decision. The trooper telephoned the public defender who was on-call at the time and stated that a DUI suspect wished to speak with her. The public defender asked the officer if he had run a motor vehicle record check, and he replied that he was not obligated to provide that information and that he would not do so. The public defender then ended the call, refusing to speak with defendant.

¶ 4.   The transcript of the processing of Velez for DUI shows that defendant was bewildered and panicked as a result of the inconsistency between the trooper's statements, first, that as a DUI detainee, Velez had a right to consult with an attorney, but second, that the attorney contacted was refusing to speak with him. Velez repeatedly stated that "I'm very confused. I'm at a loss." He insisted, "I can't do anything without an attorney advising me." He asked the officer, "What's the right thing to do? Can I just ask you as a human being."

¶ 5.   Trooper Nally could not give defendant legal advice. He read to defendant again from the standard processing form, and repeated the question "Will you give a sample of your breath as evidence?" At the expiration of the thirty-minute period after which a DUI suspect is required to decide whether to submit to an evidentiary test under § 1202(c), Velez provided a breath sample.

¶ 6.   The State's position is that our holding in *Gilman* does not support suppression of defendant's breath test here and that, despite defendant's inability to speak with counsel through no fault of his own, there is no remedy. The State contends that the arresting officer did all that he was required to do by telephoning the public defender and telling her that defendant wished to speak with her. It argues that the right to counsel for DUI detainees is limited in that defendants are required to make a decision within thirty minutes regardless of whether a consultation with an attorney has taken place. See 23 V.S.A. § 1202(c). In addition, the State emphasizes our holding in *State v. Fredette* that the statute does not guarantee DUI detainees a "fruitful or flawless consultation." 167 Vt. 586, 587, 705 A.2d 548, 550 (1997) (mem.).

¶ 7. Where there has been a complete denial of counsel, however, our holding in *Gilman* applies. *Gilman* arose as a result of a failure by the office of the public defender to comply with 23 V.S.A. §1202(g). In *Gilman*, the failure lay in not providing the twenty-four hour coverage for DUI detainees required by the statute. We held that it was irrelevant to our result whether a detainee was unable to consult with a lawyer because of illegal behavior on the part of the police officer or a failure of the defender general to provide coverage. 173 Vt. at 118, 787 A.2d at 1244. Where a consultation did not take place because no public defender was available to answer the telephone, we held that the same remedy was available as in cases where the police obstructed the consultation, that is, suppression of the result of the breath test, or of the fact that the detainee refused to provide a breath sample: "The State broke the law, and as a result, defendant did not receive the advice he should have to determine how to respond to a police request for a blood alcohol test. The only fair remedy is to suppress the result of defendant's uninformed choice. We cannot . . . ignore the State's refusal to comply with the law." 173 Vt. at 120, 787 A.2d at 1246.

¶ 8. There is no practical difference between the situation in *Gilman* and the public defender's refusal to consult with the detainee in the case before us today. 23 V.S.A. § 1202(g) requires that the defender general "provide statewide 24-hour coverage . . . to assure that adequate legal services are available to persons entitled to consult an attorney under this section." The public defender's decision to end the call from the processing officer deprived defendant of any opportunity whatsoever for a private consultation with an attorney. However imperfect such a consultation may have been, it would have provided defendant with an opportunity to ask questions about the way Vermont's statutory scheme worked and what decision would make sense given his driving record. Even if the attorney had ultimately refused to give defendant a recommendation on whether or not to submit to the test, counsel could have provided him with accurate information about the legal consequences of different decisions depending upon his driving record.

¶ 9. As we observed in *Gilman*, "[i]f there is any lesson in our [D]UI decisions, it is that the failure of the State to comply with counsel-related rights of a[] [D]UI detainee has consequences for the State in [D]UI prosecutions." *Gilman*, 173 Vt. at 114, 787 A.2d at 1241. These counsel-related rights are integral to the rules governing apprehension of drunk drivers in this state. Vermont's statutory scheme governing police officers' prerogative to request suspects to submit to evidentiary tests in the DUI context balances the State's interests in effectively enforcing its

laws against the rights of individual motorists. *State v. Madonna,* 169 Vt. 98, 100, 726 A.2d 498, 500 (1999). Recognizing that the consequences of agreeing or refusing to submit to a breath test are legally complex, the Legislature established a mechanism for providing DUI detainees an opportunity to obtain professional advice from counsel. This mechanism places clear responsibilities on two agencies of state government: the police, who must comply with their statutory obligation to contact the public defender at the appropriate time during DUI processing, and the public defenders, who equally must comply with their statutory obligation to counsel detainees.

¶ 10. The refusal of a public defender to speak with a DUI detainee frustrates this statutory scheme, resulting in no less serious a violation of the detainee's rights than ensues when a police officer fails to assist a detainee in obtaining a meaningful consultation in accordance with the statute. From the perspective of the detainee, the result is the same no matter which agency of state government fails to comply with its statutory mandate: behavior by a state official prevents the detainee from consulting a lawyer. As we stated in *State v. Fredette,* "[t]his Court will not tolerate deliberate efforts by law enforcement personnel to thwart an arrestee's meaningful opportunity to consult with counsel." 167 Vt. at 587, 705 A.2d at 549-50. Nor will we tolerate deliberate refusals by public defenders to provide detainees with an opportunity for consultation.

¶ 11. Nothing in our prior decisions in *Fredette* and *Ironside* compels a different result. In *Fredette,* we declined to suppress evidentiary breath test results on the grounds that the arresting officer had provided the defendant's attorney with incorrect information about the detainee's driving history. 167 Vt. at 587-88, 705 A.2d at 550. We held that "[t]he statutory right to counsel concerns an arrestee's opportunity to consult freely with an attorney, not . . . the attorney's right to consult with, or obtain correct information from, police." *Id.* In *State v. Ironside,* 167 Vt. 628, 711 A.2d 663 (1998) (mem.), we again declined to suppress evidentiary breath test results. In *Ironside,* as in the case before us today, the public defender contacted by the processing officer refused to advise the detainee on whether to submit to a breath test after the processing officer refused to disclose information about the detainee's driving record to the public defender. The defendant in *Ironside* had the opportunity to speak with an attorney on the telephone before and after the attorney spoke with the processing officer, but argued that "counsel's subsequent refusal to provide legal advice . . . was functionally equivalent to a total denial of the opportunity to consult with counsel." *Id.* at 629, 711 A.2d at 664. We decided this consultation satisfied the requirement of 23 V.S.A.

§ 1202(c) that DUI detainees have an opportunity to consult with counsel, holding that "the attorney's choice to withhold advice, in the belief that defendant's recollection of his prior record was not reliable, does not negate this fact [that defendant had a private telephone consultation with an attorney]." *Id.* at 630, 711 A.2d at 664. *Ironside* can be distinguished from the case before us today because for all we know, in *Ironside* the conduct of the public defender was based on that individual lawyer's view of what advice could be given under the circumstances. There was no indication in *Ironside* that the defender general was violating a specific statutory obligation imposed on that official. Here, the record shows that the on-call attorney's conduct was in response to specific direction from the defender general not to provide any legal services to the operator unless the police officer disclosed the operator's prior record. The defender general's instruction breached the defender general's responsibility under 23 V.S.A. § 1202(g) to provide twenty-four hour counsel, and this breach caused this defendant not to receive needed representation.

¶ 12.  We note that in neither *Ironside* nor *Fredette* did we conclude that the police should not share with the public defender what information they had available about a detainee; we held only that they should not be made the guarantors of that information and that in certain situations lack of such disclosure would not be grounds for a finding that the detainee was deprived of a statutory right to counsel. An important change in the governing statute limits the precedential value of these two cases to the case before us today. In 1997, the Legislature amended 23 V.S.A. § 1201 to criminalize refusal to submit to a breath test in some situations.[1] The criminalization of refusal has made the job of public defenders called for DUI consultations even more challenging. Due to enhanced penalties for subsequent convictions, certain DUI offenders face higher penalties for conviction for DUI than they do for criminal refusal. But to counsel a client to refuse the test would, in some cases, be suggesting that the client commit a crime. An ethics opinion by the Committee on Professional Responsibility of the Vermont Bar Association suggests that counsel in such situations may not advise the client to refuse to take the test, but can inform the client only of the legal consequences of taking or refusing the test. VBA Comm. on Prof'l Responsibility, Advisory Ethics Opinion 97-6 (1997). Apparently acting on the basis of this ethics opinion and related

---

[1] The criminal refusal statute, 1997, No. 56, § 1, became effective on August 1, 1997, and did not apply to *Fredette*, the events of which occurred on February 8, 1996, 167 Vt. at 586, 705 A.2d at 549, or to *Ironside*, the events of which took place on May 5, 1996. 167 Vt. at 628, 711 A.2d at 663.

concerns about the criminalization of refusal, in instructions effective August 1, 1997 the defender general instructed on-call attorneys that they should terminate DUI calls without speaking with suspects when the processing officer refuses to provide a motor vehicle record check.

¶ 13. As we acknowledge, there is a heightened ethical dimension to the question now facing public defenders of how to counsel DUI detainees. We do not condone, however, the decision by the defender general to promulgate a policy that requires public defenders to refuse to accept calls from detainees when police officers refuse to divulge the result of a motor vehicle record check. Providing legal advice of a general nature does not have to depend upon information about a defendant's particular situation. The thirty-minute limit on the time allowed for consultation with an attorney indicates that the consultation will be fairly limited in scope, providing the detainee with general information about relevant law rather than a coherent legal strategy. At this level of generality, a public defender can provide legal information without counseling the commission of a crime, as long as she does say that *if* the defendant belongs to one of the categories of individuals to whom the criminal refusal statute applies, refusal would be criminal. The right to consultation is the right for detainees to obtain accurate information about their legal options. For a detainee in what is undoubtedly a confusing situation, the right to consult an attorney is the right to obtain advice from someone who, unlike the processing officer, is in a position to provide unbiased professional counsel. It is not the right to unassailable legal advice. See *State v. Clark*, 164 Vt. 626, 628, 671 A.2d 1276, 1278 (1995) (mem.) (State not guarantor of attorney's advice; claim of ineffective assistance of counsel inapplicable in context of license suspension proceeding).

¶ 14. The interest of the State in keeping drunk drivers off the roads is not served by the current situation in which a conflict between two government agencies, the office of the public defender and the police, is resulting in the suppression of evidence that could help to resolve these criminal cases. Nor is it served by presenting this Court with a series of different fact-bound matters to decide. In the case before us today, defendant had no prior record. The public defender could have provided meaningful advice in this situation without detailed knowledge of the defendant's driving history. In other circumstances, the police may have an obligation to share information they have in order to enable the public defender to provide appropriate legal counsel. The police and the defender general should come to an agreement that will implement the goal of the Legislature that drivers asked to provide a breath sample have a

consultation with an attorney before they must make the decision whether or not to take the test. The consultation should be a meaningful one under the circumstances. We will not make DUI detainees the scapegoats in this stand-off between police and public defenders.[2]

*Affirmed.*

¶ 15. **Amestoy, C.J.,** dissenting. The majority finds "no practical difference" between its analysis in this case and its rationale in *State v. Gilman*, 173 Vt. 110, 787 A.2d 1238 (2001). I agree, and therefore again respectfully dissent.

¶ 16. According to 23 V.S.A. § 1202, every person who operates a vehicle on a Vermont highway has impliedly consented to an evidentiary breath test for the purposes of determining the concentration of alcohol or another drug in the blood. *Id.* § 1202(a)(1). An individual may refuse the test, but not without consequence. See *id.* § 1202(b) ("refusal may be introduced as evidence in a criminal proceeding"); see also *State v. Madonna*, 169 Vt. 98, 99, 726 A.2d 498, 499 (1999) ("the decision whether to take the test involves potentially serious consequences"). As such, the Legislature has provided individuals a statutory right to consult with an attorney prior to deciding whether or not to submit to the test. See 23 V.S.A. § 1202(c).

¶ 17. The above statutory scheme is clear in its efforts to *balance* the rights of individual motorists against the State's need to enforce the law. See *Madonna*, 169 Vt. at 100, 726 A.2d at 500. On one hand, the Legislature has provided individual motorists with not only a right to consult an attorney, but also a mechanism for promoting this consultation via "statewide 24-hour coverage seven days a week to assure that adequate legal services are available to persons entitled to consult an

---

[2] This is primarily a conflict over access to public information, that is, disposition of criminal cases in this state. Law enforcement currently has effective access to that information from their database, but the public defenders do not because they cannot use the police database and cannot look up paper records in every district courthouse in the state in order to give immediate telephone advice.

The problem can be solved from the judiciary records, at least with respect to Vermont convictions. The docket entries, including conviction information, on all open and closed criminal cases (since 1978) are available electronically and can be searched on a statewide basis by name of defendant. Under this Court's Rules Governing Dissemination of Electronic Case Records, § 3(a), the public is entitled to those records, and the Court Administrator is authorized to provide electronic access from remote locations over the Internet. Accordingly, we direct the Court Administrator to provide that access to defenders as soon as possible so they can make the determination that will allow them to give more meaningful advice. If this proves workable, this decision should not create any "scapegoats" whatsoever, despite the dissent's fears to the contrary.

attorney under this section." 23 V.S.A. § 1202(g). The State bears the burden of both informing a motorist of his right to counsel, and of "actually attempting to contact counsel within the thirty-minute time period." *Madonna*, 169 Vt. at 100, 726 A.2d at 500. On the other hand, however, the Legislature has recognized the State's need to efficiently and effectively enforce DUI laws. Accordingly, the above right to consult with counsel is limited in scope. See 23 V.S.A. § 1202(c) ("A person who is requested by a law enforcement officer to submit to an evidentiary test or tests has a right *as herein limited* to consult an attorney . . . .") (emphasis added). First, an individual must decide whether or not to submit to the test within a reasonable time, not more than thirty minutes following an initial attempt to contact an attorney. *Id.* Second, the individual "must make a decision about whether or not to submit to the test or tests at the expiration of the 30 minutes *regardless of whether a consultation took place." Id.* (emphasis added).

¶ 18. As in *Gilman*, the majority's holding frustrates this mandated balance. While this Court rightly refuses to tolerate law enforcement personnel's deliberate attempts to interfere with a detainee's right to consult with counsel, the statute does not guarantee a detainee a "fruitful or flawless consultation." *State v. Fredette*, 167 Vt. 586, 587, 705 A.2d 548, 550 (1997) (mem.). As such, " '[t]he statutory mandate is fulfilled when *reasonable efforts* are made to allow an arrestee to consult privately with counsel.' " *Id.* at 587, 705 A.2d at 549 (emphasis added) (quoting *State v. West*, 151 Vt. 140, 144-45, 557 A.2d 873, 876 (1988)). Here, trooper Nally attempted to contact two on-call public defenders. He left two messages for attorney Spaulding, neither of which were returned within the thirty-minute period. After seven attempts, he then contacted attorney London, who refused to speak with Velez following trooper Nally's refusal to provide London with results of a motor vehicle record check. We have twice before held that lack of police disclosure is not grounds for finding that a detainee was deprived of his statutory right to counsel. See *State v. Ironside*, 167 Vt. 628, 629-30, 711 A.2d 663, 664-65 (1998) (mem.) (finding that police are not obligated to provide record check information to counsel); *Fredette*, 167 Vt. at 587-88, 705 A.2d at 550 (holding that an individual's statutory right to counsel concerns his "opportunity to consult freely with an attorney, not . . . the attorney's right to consult with, or obtain correct information from, police"). Consequently, by making a diligent, good-faith attempt to contact counsel as requested by Velez, Nally carried the State's statutory burden here. See *Madonna*, 169 Vt. at 101, 726 A.2d at 500 ("*[S]o long as there is an attempt to contact counsel,*

32

a decision must be made at the close of the thirty-minute time period.")
(emphasis added).

¶ 19. I entirely agree with the majority's observation that the public's interest in keeping drunk drivers off the road is not served by the current conflict between the office of the public defender and the police. The gamesmanship between the two agencies — which does credit to neither — is not, however, a sufficient legal rationale for reaching an absurd result. The defendant here had the full benefit of the statutorily created — and statutorily limited — right to require the State to make a good faith effort to contact counsel within the thirty-minute time period. It is the public that is made the "scapegoat" in this case. I respectfully dissent. I am authorized to say that Justice Skoglund joins in this dissent.