NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 99

No. 2014-410

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orange Unit, |
| | Criminal Division |
| | |
| Paul Aiken | April Term, 2015 |

Robert P. Gerety, Jr., J.

H. Dickson Corbett, Orange County Deputy State's Attorney, Chelsea, for Plaintiff-Appellee.

Kyle L. Hatt of Sleigh Law, P.C., St. Johnsbury, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **DOOLEY, J.** Defendant appeals the decision of the Orange Superior Court, Criminal Division denying his motion to suppress his refusal to submit to an evidentiary breath test on the ground that he was denied his right to counsel under 23 V.S.A. § 1202. We affirm.

¶ 2. The following facts are undisputed. On November 12, 2013, shortly before midnight, defendant was pulled over for speeding. The police sergeant observed that defendant's eyes were bloodshot and watery, and he detected a faint odor of alcohol coming from inside defendant's vehicle. Defendant admitted to consuming alcohol prior to operating the vehicle, and preliminary breath and field sobriety tests indicated that defendant's blood-alcohol content was above the legal limit. Defendant was detained and taken to the police barracks for processing. During processing, the sergeant read defendant his rights under Vermont's implied-

consent law, 23 V.S.A. § 1202, which includes defendant's right to consult with a public defender before deciding whether to submit to an evidentiary breath test, id. § 1202(c), (g). Defendant requested to speak to an attorney. The sergeant attempted to reach the on-call public defender but was unable to reach him. He left a voicemail asking the attorney to contact the police barracks, but the attorney never called back. The sergeant then called the back-up public defender and got him on the line. He handed the phone over to defendant, left the room, and shut off the audio-recording equipment, leaving defendant to speak with the attorney in private.

¶ 3. The following is defendant's account of his conversation with the public defender. The two exchanged pleasantries, but before any legal consultation, the attorney asked defendant if he would "hold on," and the conversation stopped. Defendant waited approximately ten minutes for the attorney to return and then called to the sergeant for help. Although audio-recording equipment had been shut off in the processing room, a video feed from the room appears to show defendant not talking for the duration of the ten minutes.

¶ 4. After defendant explained to the sergeant that he had been on hold for ten minutes, the sergeant again attempted to call both public defenders. There was no answer at any of the numbers he called for the on-call attorney, and the back-up attorney's line was busy. The sergeant told defendant that he had ten more minutes and that if neither public defender returned his call he would have to decide whether or not to take the evidentiary breath test regardless of obtaining legal consultation. After the thirty minutes elapsed, the sergeant asked defendant if he would submit to the breath test. Defendant refused to answer, and the sergeant understood this as a refusal to take the test.

¶ 5. Defendant was charged with driving under the influence (DUI) pursuant to 23 V.S.A. § 1201(a)(2). He moved to suppress the evidence of his refusal to take the evidentiary test "on the ground that he suffered a complete denial of his right to counsel under 23 V.S.A. §§ 1202(c), (g)." The trial court, in a brief entry order, denied defendant's motion, stating,

2

"Defendant began communication with lawyer and at that point lawyer was no longer an agent of the state and action of lawyer placing client on hold is not state action." The court further explained, "The State's obligations under 23 V.S.A. § 1202(c) were satisfied when Defendant made contact with public defender and began speaking with public defender." Defendant moved for the trial court to reconsider, arguing that the court's "reasoning in denying Defendant's motions wars with unambiguous Vermont Supreme Court precedent in this area of the law." The court again denied defendant's motion, for the reasons stated in its original order. This appeal followed.

¶ 6. Defendant renews on appeal his argument that our case law holding that the defender general's office has a statutory obligation to provide twenty-four-hour legal consultation to DUI detainees controls here because the public defender failed to provide any advice. In response, the State puts forth the rationale of the trial court that, once the public defender was on the phone with defendant, he no longer was an agent of the state and the statutory obligation to provide consultation was satisfied. Although we affirm the trial court, we do not agree with the position of either party. Rather, we conclude that an attorney-client relationship formed when defendant spoke with the public defender and that such communication cannot form the basis of determining a § 1202(g) violation.

¶ 7. Generally, when reviewing the trial court's denial of a motion to suppress, we defer to the court's factual findings and review its legal conclusions de novo. State v. Grenier, 2014 VT 121, ¶ 16, ___ Vt. ___,110 A.3d 291. In this case, however, the trial court did not hold a hearing or make any factual findings but instead assumed as true the allegations in defendant's motion. We therefore apply this same standard on review and assume defendant's allegations to be true. Cf. Skaskiw v. Vt. Agency of Agric., 2014 VT 133, ¶ 6, ___ Vt. ___, 112 A.3d 1277 (reviewing motion to dismiss under same standard as trial court and assuming as true all facts pleaded in complaint).

3

¶ 8.    We start with the statutory provisions at issue.   In relevant part, Vermont's implied-consent statute provides:

> A person who is requested by a law enforcement officer to submit to an evidentiary test or tests has a right as herein limited to consult an attorney before deciding whether or not to submit to such a test or tests.  The person must decide whether or not to submit to the evidentiary test or tests within a reasonable time and no later than 30 minutes from the time of the initial attempt to contact the attorney.  The person must make a decision about whether or not to submit to the test or tests at the expiration of 30 minutes regardless of whether a consultation took place.

23 V.S.A. § 1202(c).   The statute further requires the defender general's office to "provide statewide 24-hour coverage seven days a week to assure that adequate legal services are available to persons entitled to consult an attorney under this section."  Id. § 1202(g).

¶ 9.    The State has two obligations under § 1202: (1) the law enforcement officer must notify a detainee of his right to counsel and make a reasonable effort to contact a public defender at the appropriate time during DUI processing; and (2) the defender general's office must provide detainees with twenty-four-hour access to legal counsel.  Id.; State v. Velez, 2003 VT 1, ¶ 9, 175 Vt. 23, 819 A.2d 712; see also State v. West, 151 Vt. 140, 144-45, 557 A.2d 873, 876 (1988) ("The statutory mandate is fulfilled when reasonable efforts are made to allow an arrestee to consult privately with counsel."); State v. Gilman, 173 Vt. 110, 117-18, 787 A.2d 1238, 1244 (2001) (holding that suppression remedy is available to detainee when defender general's office fails to comply with § 1202(g)).   We have several precedents interpreting the rights and obligations under §§ 1202(c) and (g).   These cases generally fall into two lines: (1) those that address the sufficiency of a detainee's access to counsel; and (2) those that address the content of a detainee's legal consultation.  In general, we have we have found violations of the statutory scheme in the first line of cases but not the second.

¶ 10.    With respect to the sufficiency of a detainee's access to counsel, we have held that a law enforcement officer violates § 1202(c)'s guarantee that a detainee have access to

4

counsel when the officer fails to adequately inform the detainee of the statutory right to counsel, State v. Duff, 136 Vt. 537, 539-40, 394 A.2d 1145, 1146 (1978); does not attempt to call available public defenders, State v. Madonna, 169 Vt. 98, 101, 726 A.2d 498, 500 (1999); or fails to give the detainee reasonable privacy during the consultation, State v. Lombard, 146 Vt. 411, 415, 505 A.2d 1182, 1184-85 (1985). We also have held that the defender general violates § 1202(g)'s requirement that it provide twenty-four-hour public defender services when no public defender can be reached by phone, Gilman, 173 Vt. at 117-18, 787 A.2d at 1244, or the public defender refuses to speak to the detainee due to the officer's refusal to run a records check on the detainee, Velez, 2003 VT 1, ¶¶ 8-10. As these cases demonstrate, we "will not tolerate deliberate efforts by law enforcement personal to thwart an arrestee's meaningful opportunity to consult with counsel," id. ¶ 10 (quoting State v. Fredette, 167 Vt. 586, 587, 705 A.2d 548, 549-50 (1997) (mem.)), "[n]or will we tolerate deliberate refusals by public defenders to provide detainees with an opportunity for consultation," id.

¶ 11. On the other hand, we generally have rejected claims of a statutory violation based upon the content—or lack of content—of the consultation. For example, in State v. Ironside, 167 Vt. 628, 629-30, 711 A.2d 663, 664-65 (1998) (mem.), we found no statutory violation where the public defender briefly spoke in private with the detainee but refused to give advice based on the detainee's representation of his prior DUI convictions. We reasoned that "the police officer afforded defendant a private telephone consultation with an attorney, and thus the statute was satisfied; the attorney's choice to withhold advice, in the belief that defendant's recollection of his prior record was not reliable, does not negate this fact." Id. We found this result consistent with the requirement that a detainee be afforded meaningful opportunity to consult with counsel. Id. at 629, 711 A.2d at 664; see Pfeil v. Rutland Dist. Ct., 147 Vt. 305, 309-10, 515 A.2d 1052, 1055-56 (1986) (stating that detainee must be afforded "meaningful opportunity to consult with counsel").

5

¶ 12. Similarly, we have rejected arguments from detainees that the statutory scheme was violated when they received inaccurate advice from their counsel. State v. Clark, 164 Vt. 626, 627-28, 671 A.2d 1276, 1278 (1995) (mem.); see Fredette, 167 Vt. at 587, 705 A.2d at 550 (stating that although statute requires meaningful opportunity for consultation, it does not guarantee "fruitful or flawless" consultation). We emphasized in Clark that "[t]he fact that [the detainee] was dissatisfied with the advice he received [from the public defender] and that the advice was incorrect does not undermine the meaningful character of the opportunity to consult with an attorney." 164 Vt. at 628, 671 A.2d at 1278.

¶ 13. Defendant argues that his case is controlled by precedents like Velez, where there has been a complete denial of counsel, rather than Ironside and similar cases where deficiencies in the content of the consultation are at issue. Although we recognize that this is a close case, with elements of both lines of precedent, we conclude that it is controlled by Ironside.

¶ 14. Both Ironside and Velez arose out of a dispute between the defender general and state and local law enforcement officers about whether the detaining officer was required to determine and disclose to the on-call public defender the detainee's prior criminal convictions. This information is relevant in light of 23 V.S.A. §§ 1201(b) and (c), which make it a crime for detainees who previously had been convicted of DUI or were involved in an accident resulting in death or serious bodily injury to refuse to take an evidentiary breath test. The incident in Ironside occurred prior to the passage of §§ 1201(b) and (c) and, as discussed above, involved both the officer's refusal to inform the public defender of the detainee's prior record and the public defender's distrust of the detainee's own account of his criminal record. The incident in Velez, however, occurred after passage of the new statutory framework. The public defender in Velez refused to speak with the detainee after the officer refused to disclose the detainee's prior criminal record. Importantly, the public defender's refusal was based on a protocol issued by the

defender general that directed its on-call defenders to not consult with detainees in those circumstances. 2003 VT 1, ¶ 12.

¶ 15. Ironside and Velez are similar in one respect: neither involved an alleged violation of § 1202(c). Similarly, here, the officer took all reasonable steps to provide defendant with his statutory right to counsel: the officer called the two public defenders on duty, allowed defendant to speak privately with the available attorney, again called the two attorneys after defendant said he had been placed on hold, and gave defendant the full thirty-minute period to wait for the attorneys to return his calls. Additionally, defendant was able to reach a public defender and speak with him on the phone, however briefly. Thus, there was no § 1202(c) violation.

¶ 16. Ironside and Velez are different in two very significant respects that control our decision here. The first difference involves the role of the defender general. In Ironside, there was no indication that the defender general played any role in the conduct of the individual on-call attorney who formed an attorney-client relationship with the detainee and acted as an independent professional. To the contrary, in Velez, the public defender was acting under the direction of the defender general in refusing to speak with the detainee. This distinction is important because § 1202(g)—the subsection at issue here—imposes on the defender general a duty to provide twenty-four-hour coverage "to assure that adequate legal services are available," but does not regulate the content of the communication between the attorney and the detainee. As in Ironside, there is no indication here that the public defender was acting under any directive or enforcing any policy of the defender general in his interaction with the detainee. Thus, there was no § 1202(g) violation.

¶ 17. The second difference involves the conduct of the public defender. In Ironside, the public defender briefly spoke with the detainee but ultimately did not provide any advice. In Velez, on the other hand, the public defender refused to speak even briefly with the detainee.

7

This distinction is important because the public defender and the detainee in Velez never formed an attorney-client relationship involving confidential communication, whereas in Ironside they did.

¶ 18. We recognize the "sacrosanct privacy" of the attorney-client relationship. Cody v. Cody, 2005 VT 116, ¶ 23, 179 Vt. 90, 889 A.2d 733. Confidentiality is the cornerstone of the attorney-client relationship, as "encouraging clients to make the fullest disclosure to their attorneys enables attorneys to act more effectively, justly, and expeditiously," Baisley v. Missisquoi Cemetery Ass'n, 167 Vt. 473, 482, 708 A.2d 924, 929 (quotation omitted), and our evidentiary and ethical rules reflect the importance of confidentiality in these relationships, see V.R.E. 502(b) (confidential attorney-client communication inadmissible absent client consent); Vt. R. Prof'l Conduct 1.6(a) (attorney shall not disclose information relating to representation of client without informed consent).

¶ 19. Indeed, as noted above, supra, ¶ 10, our cases involving § 1202(c) emphasize the importance of privacy in the detainee's consultation with an attorney. See West, 151 Vt. at 144-45, 557 A.2d at 876 ("The statutory mandate is fulfilled when reasonable efforts are made to allow an arrestee to consult privately with counsel." (emphasis added)). Although the consultation here was brief, an attorney-client relationship was formed, see Cody, 2005 VT 116, ¶¶ 19-20, and we believe that peering behind the veil of that privacy to ascertain the quality of the consultation would open the door to eroding the privacy afforded to detainees in their right to counsel.

¶ 20. While defendant here waived the attorney-client privilege to the extent of his representations to the officer about his interaction with the public defender, because it was in his interest to do so, we do not find that to be an adequate resolution of the conflict. Defendant might have made very damaging disclosures to his attorney and, in challenging whether the State fulfilled its statutory obligation, would be put in the position of allowing those disclosures to be

8

revealed. The State, in turn, would be put in the difficult position of dealing with an attorney who is reluctant to disclose confidential communication[*] and thus establishing what the attorney said based solely on defendant's disclosures. We reiterate our observation in Clark that relying upon testimony about the content of confidential communication is "unworkable" and puts the State in the position of "guarantor" that the content of the communication is minimally adequate. 164 Vt. at 628, 671 A.2d at 1278. We conclude that the best course is to not allow the content of confidential communications to be the basis for determining a § 1202(g) violation.

¶ 21. In drawing our conclusion about confidentiality, we do not accept defendant's contention that there are other ways to determine whether a detainee received adequate consultation that protect the privacy of the consultation, such as observing the detainee's conduct on the video feed or using the detainee's decision as to whether to submit to the evidentiary test as circumstantial evidence of having received adequate consultation. Neither of those methods tells us what actually happened in the conversation, and neither addresses our concern that the defender general's office must become the guarantor of the quality of the attorney's advice.

¶ 22. For the above reasons, we hold that the State violated neither § 1202(c) nor § 1202(g). Defendant therefore was obligated under § 1202(c) to "make a decision about whether or not to submit to the test" within the thirty-minute timeframe required under the statute. Because he failed to do so, the trial court did not err in denying defendant's motion to suppress.

Affirmed.

---

[*] In its brief, the State represented that it sought a statement from the public defender but that the defender refused, citing the confidentiality of his communication with defendant.

FOR THE COURT:

Associate Justice