NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 14

No. 24-AP-121

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Kent Eaton | September Term, 2025 |

Michael S. Kupersmith, J. (Ret.) (motion to suppress); John L. Pacht, J. (final judgment)

Sarah F. George, Chittenden County State's Attorney, and Andrew Gilbertson, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Rebecca Turner, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Zonay, Supr. J., Specially Assigned

¶ 1.     **WAPLES, J.**   Defendant entered a conditional guilty plea to driving under the influence of alcohol (DUI) and he challenges the court's denial of his motion to suppress his evidentiary breath-test result. We affirm.

I. Procedural History

¶ 2.     Defendant was charged with DUI following a single-car accident. He moved to suppress the results of his evidentiary breath test, arguing that he did not knowingly agree to take the test; he was coerced into taking it; and he was denied his statutory right to meaningfully consult with counsel. The State opposed the motion.

¶ 3.     Following a May 2023 hearing at which defendant and the on-call attorney testified, the court denied the motion. The court found the following facts, which were essentially

undisputed. Defendant was involved in a single-car motor-vehicle accident. He was arrested on suspicion of DUI and transported to the police station. The arresting officer read the implied consent form to defendant, including informing defendant of his statutory right to "consult an attorney" before deciding whether to submit to an evidentiary breath test. 23 V.S.A. § 1202(c).

¶ 4. Defendant consulted privately with the on-call attorney, who asked the processing officer if defendant had any prior DUI convictions. The officer responded, erroneously, that defendant had one prior DUI. In fact, although defendant was previously charged with DUI, he ultimately instead pled guilty to negligent operation. There was no evidence or argument that the officer intentionally misled the on-call attorney. Based on the information provided by the officer, the on-call attorney advised defendant to submit to the test. The court credited defendant's testimony that he had a "fuzzy" recollection of his prior case, and that he planned to refuse the evidentiary test, but changed his mind based on the on-call attorney's advice.[1]

¶ 5. In his motion to suppress, defendant argued that he submitted to the breath test only because the arresting officer reported inaccurately to the on-call attorney that he had a prior DUI conviction. As a result of this mistake, defendant stated that he was led to believe that he could be found guilty of criminal refusal if he declined to submit to the test, when in fact he could not have been. See 23 V.S.A. § 1201(b) (providing that "person who has previously been convicted of a violation of this section shall not operate . . . any vehicle on a highway and refuse a law enforcement officer's reasonable request under the circumstances for an evidentiary test where the officer had reasonable grounds to believe" that person is driving under influence). Under these circumstances, defendant argued that his decision to take the breath test was not made knowingly; it was coerced; and it was made without an opportunity to meaningfully consult with an attorney in violation of 23 V.S.A. § 1202(c).

---

[1] According to the charging affidavit, the breath-test results indicated that defendant's blood-alcohol content was 0.121.

¶ 6.    The trial court concluded that this case fell squarely within the holding of State v. Fredette, 167 Vt. 586, 705 A.2d 548 (1997) (mem.), in which this Court reversed suppression of DUI breath test results under factual circumstances similar to this case.  See infra, ¶¶ 10-13 (discussing Fredette).  The trial court concluded that Fredette disposed of defendant's claim that he was denied a meaningful opportunity to consult with counsel.  Fredette also disposed of defendant's claim that, because his attorney received incorrect information, he did not "knowingly" decide to submit to the test.  The court did not consider defendant's assertion that his decision to take the breath test was coerced, explaining that defendant provided no legal authority for the proposition that evidence obtained by police because of unintentional misdirection constituted coercion.  The court thus denied the motion to suppress.

¶ 7.    Defendant moved for reconsideration, asking the court to reach his coercion argument.  Defendant noted that he had cited State v. Edelman, 2018 VT 100, 208 Vt. 372, 198 A.3d 556, which recognizes that a defendant could argue that his consent to a breath test was "coerced by threats or force."  Id. ¶ 10 (quotation omitted).  The court denied the motion, reiterating that defendant provided no case law reflecting that providing unintentionally inaccurate information amounted to legal coercion.  Defendant entered a conditional guilty plea to DUI and this appeal followed.

## II.  Arguments on Appeal

¶ 8.    "In reviewing a motion to suppress, we review the trial court's legal conclusions de novo and its findings of fact under a clearly erroneous standard."  State v. Ford, 2007 VT 107, ¶ 4, 182 Vt. 421, 940 A.2d 687.  Where, as here, defendant challenges only the legal conclusions of the trial court, our review is "nondeferential and plenary."  State v. Bryant, 2008 VT 39, ¶ 9, 183 Vt. 355, 950 A.2d 467.

A. Meaningful Opportunity to Consult with Attorney

¶ 9.     We begin by addressing defendant's argument that he was denied his right to a meaningful opportunity to consult with counsel because the officer incorrectly told his attorney that he had a prior DUI conviction.  Under Vermont law, a person suspected of DUI has a statutory right to consult with an attorney before taking an evidentiary breath test requested by a law enforcement officer.  Section 1202(c) of Title 23 provides:

> A person who is requested by a law enforcement officer to submit to an evidentiary test or tests has a right as limited in this subsection to consult an attorney before deciding whether or not to submit to such a test or tests.  The person must decide whether or not to submit to the evidentiary test or tests within a reasonable time and not later than 30 minutes after the time of the initial attempt to contact the attorney.  The person must make a decision about whether to submit to the test or tests at the expiration of the 30 minutes, regardless of whether a consultation took place.

See also id. § 1202(d)(4) (providing that "[a]t the time a test is requested," police must inform person of this limited right to consult attorney).

¶ 10.     We assessed the scope of the right provided by § 1202(c) in State v. Fredette, 167 Vt. at 587-88, 705 A.2d at 549-50.  There, a police officer erroneously told the on-call attorney that the defendant had only one prior DUI conviction when, in fact, he had two.  Id. at 586, 705 A.2d at 549.  The attorney advised the defendant to submit to the evidentiary test.  Id.  Had the attorney known that the defendant had two prior convictions and could be charged with a third-offense felony, she would have advised him to decline the test.  Id.  The trial court in Fredette suppressed the breath-test result, "concluding that by unintentionally providing the public defender with erroneous information, the arresting officer had denied [the] defendant a meaningful opportunity to consult with his attorney."  Id.  The trial court reasoned that "the public defender was entitled to rely on the information provided by the officer, who is presumed to have access to resources enabling him to conduct a fast and accurate check for prior convictions," and the "defendant was prejudiced as the result . . . because the attorney would have given him different legal advice if the officer had provided the correct information."  Id. at 586-87, 705 A.2d at 549.

4

¶ 11. This Court reversed. Id. at 586, 705 A.2d at 549. It recognized that "a person who is asked by a law enforcement officer to take an evidentiary breath test has a statutory right to consult with an attorney before deciding whether to submit to such a test," and it held that "[t]he statutory mandate is fulfilled when reasonable efforts are made to allow an arrestee to consult privately with counsel." Id. at 587, 705 A.2d at 549 (quotation omitted) (citing 23 V.S.A. § 1202(c)); see also Pfeil v. Rutland Dist. Ct., 147 Vt. 305, 309, 515 A.2d 1052, 1055 (1986) (holding that "statutory right to counsel that attaches prior to testing includes the right to communicate freely with an attorney in private"); State v. West, 151 Vt. 140, 144, 557 A.2d 873, 876 (1988) (holding that "defendant's right to consult with his [or her] attorney is of little value if that consultation is monitored by police, or if the unjustified presence of police has a chilling effect on the defendant's consultation," and "defendant's right to a meaningful consultation with counsel contemplates a reasonable degree of privacy"). The Fredette Court held that while it "w[ould] not tolerate deliberate efforts by law enforcement personnel to thwart an arrestee's meaningful opportunity to consult with counsel," "affording a meaningful opportunity to speak with counsel does not guarantee a fruitful or flawless consultation" and "arrestees cannot be assured . . . of obtaining sound advice from the attorney obtained for them." Id. (emphasis omitted).

¶ 12. The Court cited State v. Clark, 164 Vt. 626, 627-28, 671 A.2d 1276, 1278 (1995) (mem.), in support of its conclusion. In Clark, a civil-suspension proceeding, the defendant argued that the on-call attorney misinformed him about the penalty for refusing to take a breath test as compared to the consequence for not passing a breath test. Id. at 627, 671 A.2d at 1277. The Court noted that the informed-consent form "correctly informed [the defendant] of the consequences of refusal." Id. at 626, 671 A.2d at 1277. It held that the defendant was "afforded a meaningful opportunity to consult with counsel" when he spoke with counsel on two occasions. Id. at 628, 671 A.2d at 1278 (quotation omitted). The fact that the defendant "was dissatisfied with the advice he received and that the advice was incorrect [did] not undermine the meaningful

character of the opportunity to consult with an attorney." Id. (emphasis omitted). The Court reasoned that "[a]llowing suppression . . . when the advice given by counsel is inaccurate would be tantamount to making the State the guarantor of the attorney's advice," and "[a]side from being unworkable, such a requirement is beyond the scope of the statute, and we will not require more than the statute." Id. (citing State v. Lynaugh, 158 Vt. 72, 74, 604 A.2d 785, 786 (1992) ("Defendant received all the advice required by [statute], and we decline to require more.")); see also State v. Aiken, 2015 VT 99, ¶ 20, 200 Vt. 247, 129 A.3d 87 (reiterating "that relying upon testimony about the content of confidential communication is unworkable and puts the State in the position of guarantor that the content of the information is minimally adequate" (quotations omitted)).

¶ 13. In a similar vein, the Court held in Fredette, 167 Vt. at 587-88, 705 A.2d at 550, that "[t]he statutory right to counsel concerns an arrestee's opportunity to consult freely with an attorney, not with the attorney's right to consult with, or obtain correct information from, police." See also State v. Ironside, 167 Vt. 628, 629-30, 711 A.2d 663, 664-65 (1998) (mem.) (concluding that defendant received meaningful opportunity to consult with counsel, and rejecting argument that State "withheld information necessary for counsel to effectively represent his client" when officer told on-call attorney that he could not disclose defendant's prior conviction records under department policy); Aiken, 2015 VT 99, ¶¶ 11-12 (recognizing that this Court "generally [has] rejected claims of a statutory violation based upon the content—or lack of content—of the consultation" and similarly has "rejected arguments from detainees that the statutory scheme was violated when they received inaccurate advice from their counsel," and citing cases).

¶ 14. As the trial court observed, this case is virtually identical to Fredette and is therefore controlled by that decision. Defendant argued only that Fredette was distinguishable from the instant case in his brief on appeal. He did not ask below, or in his brief, that Fredette be overruled. According to defendant, we held in Fredette that defendants are statutorily entitled to the

6

opportunity to have "an accurate consultation" with counsel before deciding whether to take an evidentiary breath test. This is not the holding of Fredette and Fredette cannot be distinguished on the grounds identified by defendant.

¶ 15. Because defendant's arguments on appeal "implicate[d] the reasoning, scope, and application of Fredette and related cases," the Court directed the parties to submit "supplemental briefing on the questions of whether they believe Fredette and related cases should be overruled and the possible implications of such a ruling, including for processing officers and on-call public defenders." In his supplemental brief, defendant asks that Fredette and Clark be overruled. He asserts that Fredette creates a conflict with Vermont's implied-consent law, the Rules of Professional Conduct, and the Public Defender Act. According to defendant, § 1202(c) requires that the on-call attorney provide a DUI suspect with accurate advice for the consultation to be "meaningful," contrary to Fredette and Clark. Defendant cites State v. Ettore for the general proposition that persons suspected of DUI must "possess the necessary information to make an informed decision about the exercise of their statutory rights." 2024 VT 52, ¶ 14, 220 Vt. 37, 327 A.3d 773.

¶ 16. We do not "lightly overturn recent precedent," In re Barber, 2018 VT 78, ¶ 2 n.1, 208 Vt. 77, 195 A.3d 364 (quotation omitted), mindful that "the doctrine of stare decisis is of fundamental importance to the rule of law," Patterson v. McLean Credit Union, 491 U.S. 164, 172 (1989) (emphasis and quotation omitted), superseded by statute, Civil Rights Act of 1991, 105 Stat. 1071, on other grounds as recognized in CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008); see also State v. Berini, 167 Vt. 565, 566, 701 A.2d 1055, 1056 (1997) (mem.) ("While not slavish adherents to stare decisis, we generally require more than mere disagreement to overturn a decision . . . ." (citation omitted)). "Considerations of stare decisis have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and [the Legislature] remains free to alter what we have done."

Patterson, 491 U.S. at 172-73 (emphasis omitted) (recognizing that "burden borne by the party advocating the abandonment of an established precedent is greater where the Court is asked to overrule a point of statutory construction"); see also Chittenden v. Waterbury Ctr. Cmty. Church, Inc., 168 Vt. 478, 490-91, 726 A.2d 20, 29 (1998) ("Although we are not slavish adherents to stare decisis, we do not lightly overrule settled law especially where it involves construction of a statute which the legislature could change at any time." (quotations omitted)).  We conclude that defendant has failed to demonstrate any "special justification" for overruling our prior interpretation of § 1202(c) in Fredette and Clark.  Patterson, 491 U.S. at 173.

¶ 17.    The right to consult with counsel provided by § 1202(c) is a purely statutory right. See State v. Stenson, 169 Vt. 590, 590-91, 738 A.2d 567, 569 (1999) (mem.) ("The right to speak to an attorney provided by 23 V.S.A. § 1202(c) . . . is not grounded in either the Vermont or United States Constitution, but only in the statute itself.").  Our primary goal in interpreting a statute is to effectuate the Legislature's intent, as expressed in the statutory language.  State v. Deyo, 2006 VT 120, ¶ 14, 181 Vt. 89, 915 A.2d 249.  "Where plain and unambiguous, we presume the Legislature intended the express meaning of that language, and we enforce it according to its terms without resorting to statutory construction."  Id.

¶ 18.    Section 1202(c) states simply that "[a] person who is requested by a law enforcement officer to submit to an evidentiary test or tests has a right as limited in this subsection to consult an attorney before deciding whether or not to submit to such a test or tests."  The statute says nothing about the content of the attorney consultation.  It does not require the attorney to provide the person with accurate information or advice.  It also does not require an officer to inform a person or the on-call attorney of the person's DUI criminal history, as urged by defendant.  "It is a well settled principle of statutory construction that we will not read words into a statute that are not there, unless it is necessary in order to make the statute effective."  State v. Hale, 2021 VT 18, ¶ 14, 214 Vt. 296, 256 A.3d 595 (alterations and quotation omitted).  The absence of any

8

language imposing standards for the content of the attorney consultation supports our prior interpretation in Fredette and Clark.

¶ 19. We acknowledge that this Court has construed § 1202(c) to "require[] an opportunity to have a meaningful consultation with counsel." West, 151 Vt. at 144, 557 A.2d at 876 (emphasis added). But a review of our cases construing this judicially created requirement makes clear that an opportunity to consult is "meaningful" if it takes place in private without unreasonable intrusion by law enforcement. See id. at 144-45, 557 A.2d at 876 (listing cases and summarizing that "[t]he statutory mandate is fulfilled when reasonable efforts are made to allow an arrestee to consult privately with counsel"). In other words, whether the opportunity is "meaningful" turns on the circumstances, and not the content, of the consultation. Indeed, "we generally have rejected claims of a statutory violation based upon the content—or lack of content—of the consultation." Aiken, 2015 VT 99, ¶ 11.

¶ 20. Defendant argues that we should nevertheless overturn Fredette and Clark because a consulting attorney cannot meet his or her ethical obligations to the client without being provided accurate information from police.[2] We are unpersuaded by this argument. As we explained in State v. Velez, the opportunity to consult with an on-call attorney does not require the attorney to know specific information about the defendant's situation or to give the defendant a recommendation on whether to submit to the test:

> Providing legal advice of a general nature does not have to depend upon information about a defendant's particular situation. The thirty-minute limit on the time allowed for consultation with an attorney indicates that the consultation will be fairly limited in scope, providing the detainee with general information about relevant law rather than a coherent legal strategy. At this level of generality, a public defender can provide legal information without counseling the commission of a crime, as long as she does say that if the defendant belongs to one of the categories of individuals to

---

[2] It is important to bear in mind that the consultation is between the on-call attorney and the person suspected of DUI, not the attorney and police. The person suspected of DUI has first-hand knowledge of their own past DUI history and is a source of information for the attorney in determining what advice to give.

> whom the criminal refusal statute applies, refusal would be criminal. The right to consultation is the right for detainees to obtain accurate information about their legal options. For a detainee in what is undoubtedly a confusing situation, the right to consult an attorney is the right to obtain advice from someone who, unlike the processing officer, is in a position to provide unbiased professional counsel. It is not the right to unassailable legal advice.

2003 VT 1, ¶ 13, 175 Vt. 23, 819 A.2d 712 (emphasis omitted). Thus, even without specific information about the DUI suspect's criminal history, the attorney can still provide general information to assist the person in deciding what to do, consistent with his or her ethical obligations.

¶ 21. Defendant further argues that under the Public Defender Act, a defense attorney "is entitled to use any State technical services and facilities for the development or evaluation of evidence that are available to the prosecutor." 13 V.S.A. § 5277. However, this general provision in a completely different statute does not imply that police are required to provide criminal history information to the on-call attorney during a DUI consultation under § 1202(c), absent some language indicating such intent by the Legislature. Nor is such a requirement necessary to carry out the intent of § 1202(c) or § 5277, because as explained above, the on-call attorney can provide helpful advice to a DUI suspect without knowing the defendant's specific history.

¶ 22. We find it significant that in the thirty years since Clark and Fredette were decided, the Legislature has taken no action to overrule or alter our interpretation of § 1202(c). Since 1995, the Legislature has amended § 1202 nine times and has amended § 1202(c) twice. See 1997, No. 56, § 2 (adding final sentence of § 1202(c), which requires person to decide whether to submit to test after expiration of thirty minutes regardless of whether they consulted with attorney); 2017, No. 132 (Adj. Sess.), § 14 (making technical amendments to § 1202(c)). None of these amendments have altered the fundamental language of the statute in a way that would affect our holdings in Fredette, Clark, or the subsequent cases relying on those decisions. See, e.g., Aiken, 2015 VT 99, ¶ 12 (relying in part on Fredette and Clark to conclude that § 1202(c) was not violated where consultation with defense attorney ended abruptly before defendant could obtain advice);

10

Ironside, 167 Vt. at 629, 711 A.2d at 664 (holding police refusal to provide on-call attorney with criminal-record check did not violate right to consult with counsel under Fredette). The Legislature has not, for example, amended the statute to require that on-call attorneys provide accurate information to DUI suspects, or to require that police provide specific information to suspects or their attorneys during DUI processing.

¶ 23. "We must presume that the Legislature made changes in the law in light of the relevant decisions of this Court and with knowledge of prior legislation on the same subject." Thayer v. Herdt, 155 Vt. 448, 453, 586 A.2d 1122, 1125 (1990); accord State v. Messier, 2005 VT 98, ¶ 10, 178 Vt. 412, 885 A.2d 1193. Where the Legislature has an opportunity to amend a statute in response to judicial interpretation but does not do so, its inaction indicates that the judicial interpretation is consistent with legislative intent. See Trapeni v. Dep't of Emp. Sec., 142 Vt. 317, 323, 455 A.2d 329, 332 (1982) (explaining that Legislature's decision not to amend statute in response to Employment Security Board's interpretation indicated intent to adopt that construction). Because the Legislature has not acted to overturn our prior interpretations of § 1202(c), and because the plain language of the statute does not support defendant's position, we decline defendant's invitation to overrule Fredette and Clark.

## B. Remaining Arguments

¶ 24. We therefore turn to defendant's remaining arguments. Defendant claims that the State was required to establish that he voluntarily consented to the breath test and it failed to do so. According to defendant, he "repeatedly alerted the State" that it must prove that "the necessary consent was obtained" and the State failed to show that his consent was not coerced.

¶ 25. "In Vermont, motorists who choose to drive on the state's highways impliedly consent to a breath test where it is suspected a driver may be under the influence of alcohol or drugs." State v. Coburn, 2006 VT 31, ¶ 10, 179 Vt. 448, 898 A.2d 128. We have recognized, however, that "a defendant may argue that based upon particular circumstances, consent [to an

11

evidentiary breath test] was not given voluntarily." Edelman, 2018 VT 100, ¶ 9. "This is not to say," however, "that the State is required to prove voluntariness as a threshold matter every time it intends to admit breath test results." Id. ¶ 10. Instead, "when a specific challenge is made in a given case, the State must make the required showing that the defendant voluntarily submitted to the breath test." Id. "Voluntariness is to be determined from the totality of the circumstances, with the State carrying the burden of demonstrating that the consent was freely given and not coerced by threats or force, or granted only in submission to a claim of lawful authority." Id. (quotation omitted) (citing cases).

¶ 26. The "specific challenge" to voluntariness that defendant raised below was that his consent to take the breath test was the result of coercion, which was a direct result of the trooper's incorrect information. Defendant claimed that because the on-call attorney relied on the information provided, he was "threatened—inaccurately—that if he refused to take the breath test, he would be found guilty of DUI refusal." The trial court found that defendant provided no legal support for this argument and therefore did not address it. In other words, it considered this argument insufficient to draw voluntariness into question.

¶ 27. We agree that under the circumstances presented here, defendant's challenge was not sufficiently particularized to require the State to prove voluntariness. See State v. Williams, 2020 VT 91, ¶ 11, 213 Vt. 334, 246 A.3d 960 ("[A]bsent a defendant's particularized allegation that the factual circumstances of a given case rendered his consent coerced, or granted only in submission to a claim of lawful authority, the State need not prove voluntariness as a threshold matter in order for the breath test result to be admitted."); see also Edelman, 2018 VT 100, ¶ 10 (explaining that voluntariness is dependent on facts of individual case and must be determined from totality of circumstances). There was no evidence or argument that the officer deliberately misled the on-call attorney, and defendant pointed to no authority to support the notion that an officer's inadvertent misstatement about a defendant's criminal record to an on-call attorney

constitutes coercion of the defendant. Beyond the officer's inaccurate description of defendant's prior conviction, there was no evidence or argument that the officer otherwise coerced defendant's consent "by explicit or implicit means, by implied threat or covert force." Schneckloth v. Bustamonte, 412 U.S. 218, 228 (1973). Because the facts did not, on their face, raise a reasonable suggestion of coercion, the State was not required to prove voluntariness, and the court did not err in declining to address defendant's legally unsupported coercion argument.

¶ 28. Defendant alternatively argues that he did not knowingly waive his right to refuse the breath test because the officer provided incorrect information that led his attorney to misinform him about the penalties for refusal. This argument fails because "the inquiry in a consent search context is restricted to whether the consent was voluntary, not whether there was a 'knowing' and 'intelligent' waiver of a constitutional right." State v. Zaccaro, 154 Vt. 83, 88, 574 A.2d 1256, 1259 (1990); see Williams, 2020 VT 91, ¶ 12 (explaining that when faced with voluntariness challenge to consent to evidentiary breath test, "the State need not show a knowing and intelligent waiver of the right"); Schneckloth, 412 U.S. at 241 ("Nothing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures."). Thus, the State was not required to prove that defendant "knowingly" submitted to the breath test to admit the results at trial.[3] To the extent that defendant attempts to raise different arguments on appeal with respect to voluntariness and knowingness than those raised below, we do not address them. See State v. Gurung, 2025 VT 52, ¶ 4, __ Vt. __, 346

---

[3] Below, defendant cited West in support of his argument that he did not knowingly submit to the breath test. In West, the defendant claimed that he did not knowingly waive his right to refuse to take a breath test because the officer misinformed him about the consequences of refusal. 151 Vt. at 142, 557 A.2d at 875. West did not directly address the defendant's waiver theory, concluding instead that because the defendant subsequently conferred with an on-call attorney, who gave him the correct information about the penalties, there was no prejudice resulting from the officer's error. Id. West pre-dated our decision in Zaccaro, when we made clear that the consent inquiry does not require a showing that consent was made knowingly or intelligently. 154 Vt. at 88, 574 A.2d at 1259.

13

A.3d 459 (recognizing that "[t]o properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it," and "[w]e have repeatedly stressed that we will not decide issues that have not been properly preserved for appeal" (quotations omitted)).

¶ 29.   For the foregoing reasons, we conclude that the trial court correctly denied defendant's motion to suppress his evidentiary breath test results.  We therefore uphold the decision below.

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 30.   **COHEN, J., dissenting.**  I believe defendant was denied his right to meaningfully consult with counsel under 23 V.S.A. § 1202(c), warranting reversal of the trial court's suppression decision.  I therefore dissent.

¶ 31.   "While motorists on Vermont highways impliedly consent to a breath test if they are suspected of driving under the influence, they are afforded protections by statute, referred to as implied consent rights." State v. Ettore, 2024 VT 52, ¶ 11, 220 Vt. 37, 327 A.3d 773 (quotations omitted).  These include a limited right "to consult an attorney before deciding whether or not to submit" to an evidentiary breath test.  23 V.S.A. § 1202(c).

¶ 32.   The processing officer here interfered with defendant's exercise of this right by inadvertently providing incorrect information to the on-call attorney assisting defendant.  The attorney advised defendant to take an evidentiary breath test based on this information and defendant followed that advice.  The officer was not statutorily required to provide this information to the on-call attorney.  But when he voluntarily chose to do so, we should hold that he was obligated to provide correct information.  Although this conclusion requires overruling State v.

14

<u>Fredette</u>, 167 Vt. 586, 705 A.2d 548 (1997) (mem.), and related cases, I believe this step is necessary to effectuate defendant's right to meaningfully consult with counsel.

¶ 33.  "Our paramount goal in interpreting a statute is to give effect to the Legislature's intent." <u>State v. Deyo</u>, 2006 VT 120, ¶ 14, 181 Vt. 89, 915 A.2d 249.  I am mindful that the Court does not "lightly overturn recent precedent," <u>In re Barber</u>, 2018 VT 78, ¶ 2 n.1, 208 Vt. 77, 195 A.3d 364 (quotation omitted), given the "fundamental importance" of "the doctrine of <u>stare decisis</u>," <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164, 172 (1989) (quotation omitted), <u>superseded by statute</u>, Civil Rights Act of 1991, 105 Stat. 1071, <u>on other grounds as recognized in</u> <u>CBOCS West, Inc. v. Humphries</u>, 553 U.S. 442 (2008).  The <u>Patterson</u> Court discussed various grounds that might provide the "special justification" needed to depart from the doctrine of stare decisis in statutory interpretation cases.  491 U.S. at 172.  It recognized that a court's "precedent [may] become[] more vulnerable as it becomes outdated and after being tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare."  <u>Id</u>. at 174 (quotations omitted).  I believe we have reached that point here.

¶ 34.  We recognized in <u>State v. Ettore</u> the Legislature's "clear[] inten[t] that suspects possess the necessary information to make an informed decision about the exercise of their statutory rights."  2024 VT 52, ¶ 14.  The Court considered there the meaning of a different provision of 23 V.S.A. § 1202—one that provides DUI suspects the right to "elect to have a second infrared test administered immediately after receiving the results of the first test," <u>id</u>. § 1202(d)(5)—but I consider the Court's observation equally apt in the context of this case.

¶ 35.  The decision to submit to an evidentiary breath test is a "weighty" one, and as with the decision regarding whether to take a second infrared test, the detainee is "entitled to make a knowledgeable decision about whether to exercise their statutory right" to take a breath test in the first instance.  <u>Ettore</u>, 2024 VT 52, ¶ 15.  A knowledgeable decision is one based on accurate

information. This allows detainees "to make an informed decision about the exercise of their statutory rights," which is "critical." Id. ¶¶ 14, 20.

¶ 36. These important and compelling considerations lead me to conclude that our holding in Fredette and related cases has "become[] outdated," "and after being tested by experience, has been found to be inconsistent with the sense of justice." Patterson, 491 U.S. at 174; see also United States v. Anderson, 885 F.2d 1248, 1255 (5th Cir. 1989) (overturning prior interpretation of statute because it established "unjust and dangerous" rule and "[i]n such circumstances, where a wrong turn has been taken, back is the shortest way forward").[4]

¶ 37. The voluntary provision of incorrect information about defendant's criminal history in this case deprived defendant of his statutory right to a meaningful consultation with his attorney. See State v. Lynaugh, 158 Vt. 72, 75, 604 A.2d 785, 786 (1992) (recognizing that "decision whether to take a breath test should not be lightly decided" (quotation omitted)). As the trial court found, it led the on-call attorney here to advise defendant a particular way, and this advice led defendant to make a choice about the breath test that he would not have otherwise made. "While the officer did not act in bad faith, his conduct violated defendant's right to make an informed decision," which I believe warrants suppression in this case. Ettore, 2024 VT 52, ¶ 18.

_____
Associate Justice

---

[4] Because I would overrule Fredette on this basis, I do not discuss defendant's remaining arguments as to why Fredette should be overruled.

16