NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 104

No. 2014-419

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Caledonia Unit, |
| | Criminal Division |
| | |
| Kelly M. Taylor | April Term, 2015 |

Michael C. Pratt, J., Specially Assigned

Gregory Nagurney, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

David C. Sleigh and Kyle Hatt of Sleigh Law, PC, St. Johnsbury, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **ROBINSON, J.** Defendant Kelly M. Taylor appeals the civil suspension of her driver's license. On appeal, defendant argues that the trial court erred in finding that the State met its burden of showing that the breath-alcohol concentration "testing methods were valid and reliable" and that "[t]he test results were accurate and accurately evaluated," 23 V.S.A. § 1205(h)(1)(D), when the printout ("ticket") generated by the DataMaster DMT breath-alcohol testing device was not admitted into evidence. We affirm.

¶ 2. The following facts are uncontested. In July 2014, defendant was stopped by a police officer in Lyndonville on suspicion of driving under the influence of alcohol (DUI). At the stop, defendant submitted to a preliminary breath test showing an alcohol concentration above the legal limit. Defendant was arrested and taken to the Vermont State Police barracks in

St. Johnsbury, where she took an evidentiary breath-alcohol test using a DataMaster device. This test showed that defendant's alcohol concentration was 0.158, above the legal limit. See 23 V.S.A. §§ 1201(a)(1), 1205(a)(1).

¶ 3. The State filed a civil-suspension notice in the superior court. See id. § 1205(c). The State submitted affidavits from the arresting officer, who also administered the test, and from a chemist employed by the Vermont Forensic Laboratory.[1] The officer's affidavit describes the events leading up to the arrest, defendant's appearance and demeanor at the time, and the administration of the evidentiary test. Attached to the officer's affidavit was the printout generated by the DataMaster device in connection with defendant's test.[2] The chemist's affidavit states that the chemist reviewed the officer's affidavit (including the attached ticket), and that based on this information as well as her own knowledge of the device and review of the device's maintenance records, the "the test result of 0.158 . . . is an accurate and valid indication" of defendant's alcohol concentration at the time of the test.

¶ 4. At the final civil-suspension hearing, see id. § 1205(h), the trial court granted defendant's motion to exclude the ticket from evidence. The court concluded that the officer's affidavit did not incorporate the ticket by reference, so the ticket could not be considered to be part of the affidavit. The court found, however, that other evidence—the affidavits of the officer and chemist—had established that "the testing methods used were valid and reliable" and that "the test results were accurate and accurately evaluated." As a result, the court concluded that the State met its burden of showing, by a preponderance of the evidence, that the officer had

---

[1] The statutory DUI civil-suspension scheme permits the State to proceed by affidavit. 23 V.S.A. § 1205(a), (b).

[2] The ticket gives the subject's test results and the data and time at which the test was administered. It also includes information about the subject (name, date of birth, age, driver's license number); the police officer who administered the test (name and law enforcement agency); and the DataMaster device itself (serial number, location, certification date, and installation date). Finally, and most significantly, the ticket contains the calibration and internal accuracy-testing data described below. Infra, ¶ 9.

2

reasonable grounds to believe that defendant was operating a vehicle under the influence of alcohol, that defendant had submitted to the breath-alcohol test, and that the test results indicated that that her alcohol concentration was above the legal limit. Id. § 1205(i), (j).[3]

¶ 5. The court reiterated its ruling in denying defendant's motion for reconsideration on the issue of whether the State could meet its burden of proof without the ticket itself in evidence. The court explained that while the printout was excluded from evidence, "the information on the ticket was not suppressed" because the State had "provide[d] the information shown on the ticket through statements of fact contained in the affidavits of the officer and chemist," which averred that the correct procedures for administrating the test had been followed, and the accuracy and reliability of the test results were established.

¶ 6. On appeal, defendant argues that without the printout as evidence, the State cannot establish, by a preponderance of the evidence, some of the required elements of the State's civil-suspension case: that "the testing methods . . . were valid and reliable, and . . . [that] the test results were accurate and accurately evaluated." Id. § 1205(h)(1)(D). Defendant argues that without the ticket itself, the State's evidence is legally insufficient.

¶ 7. In reviewing a civil suspension of a driver's license, we review the trial court's factual findings "for clear error, recognizing that the trier-of-fact is in the best position to determine the weight and sufficiency of the evidence presented." State v. Spooner, 2012 VT 90, ¶ 11, 192 Vt. 465, 60 A.3d 640 (quotation omitted). By contrast, we review the court's conclusions on questions of law, such as the proper interpretation of 23 V.S.A. § 1205(h)(1)(D), de novo. Id. ¶ 14.

---

[3] The trial court based its ruling on its belief that the affidavit from the arresting officer, which was admitted into evidence, did not incorporate by reference the evidentiary ticket into the affidavit. That evidentiary ruling was wrong, as the third page of the officer's four-page affidavit specifically states, "The evidentiary ticket(s) is (are) incorporated by reference into this affidavit." However, the State has not argued for affirmance on this alternate basis.

¶ 8. The statutory provision at issue lists the issues that a defendant can raise at a final civil-suspension hearing:

> The issues at the final hearing shall be limited to the following:
>
> . . . Whether the test was taken and the test results indicated that the person's alcohol concentration was above a legal limit . . . at the time of operating, . . . whether the testing methods used were valid and reliable, and whether the test results were accurate and accurately evaluated. Evidence that the test was taken and evaluated in compliance with rules adopted by the Department of Public Safety shall be prima facie evidence that the testing methods used were valid and reliable and that the test results are accurate and were accurately evaluated.

23 V.S.A. § 1205(h)(1)(D).

¶ 9. Defendant argues that "[a]s used in § 1205(h)(1)(D), 'test results' means not only the numerical value representing a person's alcohol concentration at the time of the test, but also the scientific process which produced this value." The DataMaster ticket is "the only evidence of the scientific analysis which produced the numerical test result." In support of this contention, defendant notes that the ticket (1) shows the results of two "blank tests" performed by the device before the actual test (ensuring that the air-alcohol concentration is zero before the subject's submission of a sample); (2) shows whether the device passed a "calibration check" prior to the subject's submission of a sample; and (3) gives data on the device's "simulator solution" (a solution of known alcohol concentration that is tested as part of the internal accuracy tests performed before the subject's submission of a sample). In the absence of the ticket itself as evidence, defendant contends, the DUI civil-suspension procedure lacks objective, scientific validity and deprives her of the opportunity to meaningfully contest the suspension.

¶ 10. We reject defendant's claim that 23 V.S.A. § 1205(h)(1)(D) requires, as a matter of law, that the DataMaster ticket itself be admitted into evidence. Defendant's construction of the statute is difficult to square with the statutory language. The statute requires the State to establish several things in a civil-suspension hearing, including whether the "test results"

4

indicated that the person's alcohol concentration was above the legal limit (which is a distinct factor from "whether the testing methods used were valid and reliable") and whether the "test results" were accurate and accurately evaluated. If the term "test results" included the scientific process that produced the results, including the data on the DataMaster ticket, the list of the distinct elements of the State's case in § 1205(h)(1)(D) would be redundant. See Trombley v. Bellows Falls Union High Sch., 160 Vt. 101, 104, 624 A.2d 857, 860 (1993) ("[W]e do not construe the statute in a way that renders a significant part of it pure surplusage." (quotation omitted)).

¶ 11. Defendant's argument conflates the substantive elements that the State must prove with the manner by which the State must prove them. Defendant is right that in addition to showing that the numerical test result supports the civil suspension, the State has to show that the testing methods were valid and reliable, and that the test results were accurate. To do so, the State must show that the DataMaster device was working properly. Although the State's reliance on evidence other than the ticket itself may affect the weight of the State's evidence, nothing in the statute requires that the State meet its burden by offering the DataMaster ticket itself, rather than other admissible evidence. Had the Legislature intended to require admission of the ticket itself, it could have said so. See State v. Beyor, 161 Vt. 565, 566, 641 A.2d 344, 345 (1993) (mem.).

¶ 12. The question, then, is whether, in the absence of the DataMaster ticket itself, the State's evidence was sufficient to meet its evidentiary burden. The chemist, in her affidavit, identified the specific device used in this case by serial number and stated that she had personally reviewed the DataMaster ticket as well as the officer's affidavit and report; that she had personally reviewed the device's maintenance records; that she had "been trained by the manufacturer . . . to operate, calibrate, certify, maintain, repair and install" the devices; and that "the instrument used in this case meets the performance standards [set by the manufacturer and

5

by Vermont regulation] and that the test result of 0.158 . . . is an accurate and valid indication of the alcohol contest in [defendant's] system at the time of the test." The officer's affidavit certifies that his operation of the breath-alcohol testing device and administration of the test was "in accordance with my training and certification."

¶ 13. Given these affidavits, the trial court could reasonably conclude that these affidavits show that "the testing methods used were valid and reliable" and that "the test results were accurate and accurately evaluated," as required by § 1205(h)(1)(D). See State v. Rabusitz, 145 P.3d 861, 866 (Haw. Ct. App. 2006) (finding that defendant's "vaguely Luddite suspicion of the absence of hard-copy numerical evidence of a valid self-test" did not establish error where state chemist testified on reliability and accuracy of breath-test device); Grace v. Dir. of Revenue, 77 S.W.3d 29, 33 (Mo. Ct. App. 2002) ("The admission of the printout is not necessary for Director to satisfy its prima facie burden of showing driver's . . . alcohol content.").

¶ 14. Defendant argues that the chemist could not properly testify about the accuracy of the tests when her testimony on that subject was based in large part on the DataMaster ticket that was not admitted into evidence. But an expert in a DUI case may rely on information not admitted into evidence in forming an opinion. "[L]iberal evidentiary rules" apply in DUI civil-suspension proceedings. State v. Nugent, 2014 VT 4, ¶ 5, 195 Vt. 411, 88 A.3d 429. Specifically, "[e]vidence is admissible if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs, and the Vermont Rules of Evidence are inapplicable except for the rules respecting privilege." V.R.C.P. 80.5(f)(3). Even if the ordinary Rules of Evidence did apply in this setting, they would not preclude the chemist from testifying on the basis of her review of the ticket:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be

6

> admissible in evidence in order for the opinion or inference to be admitted.

V.R.E. 703. For these reasons, defendant's suggestion that the chemist could not rely on the DataMaster ticket in this case because it was not admitted into evidence has no merit.[4]

¶ 15. Nor does this ruling in any way impair defendant's ability to meaningfully challenge the test. Defendant has a statutory right to access to "all written statements and information in the possession and control of the State concerning the evidentiary test or tests, including without limitation the police report, processing forms, certification and affidavit, breath test results, police notes, and the names and addresses of witnesses." 23 V.S.A. § 1205(*l*); see also V.R.C.P. 80.5(e). Defendant made no claim in this case that the State did not make the ticket available to her pursuant to the statute and rule, and she was free to provide the ticket to her own expert for analysis or to introduce it into evidence herself.

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[4] Because the Vermont Rules of Evidence do not apply in DUI civil-suspension proceedings, V.R.C.P. 80.5(f)(3), we need not and do not decide the applicability of the best-evidence rule, V.R.E. 1002, in a criminal DUI prosecution in which the State seeks to prove the content of breath-test device printout in the absence of the printout itself. See State v. Rohr, 878 P.2d 221, 222-23 (Kan. Ct. App. 1994) (finding that officer's testimony on results of breath test, without "actual documents of certification," violates best-evidence rule); Johnston v. State, 567 So. 2d 237, 239 (Miss. 1990) (finding that officer's testimony on calibration of breath-test device violates best-evidence rule where no valid certificate of calibration was produced).