NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 75

No. 2016-192

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Criminal Division |
| | |
| Kimberly Love | February Term, 2017 |

Robert A. Mello, J.

Heather J. Brochu, Franklin County Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

Matthew Valerio, Defender General, Joshua O'Hara, Appellate Defender, and Melissa Zajicek, Law Clerk (On the Brief), for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **SKOGLUND, J.** The resolution of this appeal requires this Court to interpret 23 V.S.A. § 1205, the statute governing the procedures for civil suspensions of drivers' licenses. Specifically, the question is whether the statutory language requiring the final hearing to be held within twenty-one days of the preliminary hearing is mandatory for second or subsequent offenses and whether, as a result, defendant's civil suspension should be dismissed because her final hearing was scheduled more than twenty-one days after her preliminary hearing. The trial court concluded that the twenty-one-day requirement was not mandatory and upheld defendant's civil suspension. We reverse.

¶ 2. Section 1205 of Title 23 sets forth the procedure for suspending the license of a person who violated 23 V.S.A. § 1201—that is, a person who operated a vehicle under the influence or who refused to submit to an evidentiary blood-alcohol test. Under § 1205(c), a

violator must first be given notice of the State's intent to suspend the violator's license. A first-time violator's license will be suspended within eleven days of the violator receiving notice, unless the violator requests a suspension hearing. Id. § 1205(e)(1). If a suspension hearing is requested, a first-time violator's license will not be suspended unless the court orders a suspension after the hearing. Id. By contrast, a second or subsequent violator's license is automatically suspended within eleven days of notice, regardless of whether the second time violator requests a suspension hearing. Id. § 1205(e)(2).

¶ 3.    The suspension hearing is divided into two parts: a preliminary hearing and a final hearing on the merits. The preliminary hearing "shall be held within 21 days of the alleged offense." Id. § 1205(g). The final hearing on the merits shall be scheduled "to be held within 21 days of the date of the preliminary hearing. In no event may a final hearing occur more than 42 days after the date of the alleged offense without the consent of the defendant or for good cause shown." Id. § 1205(h). At least for a first violation, the time limits set forth for the preliminary and final hearings "are directive only, and shall not be interpreted by the court to be mandatory or jurisdictional." Id. § 1205(t). As described above, we must determine whether these time limits are mandatory for a second or subsequent violation.

¶ 4.    The facts that produced this question are not in dispute. On April 24, 2016, the police stopped defendant after a disturbance at a gas station. As a result of this stop, the police issued defendant a notice of intention to automatically suspend her driver's license by May 5, 2016. The notice stated that defendant either committed a second or subsequent violation of 23 V.S.A. § 1201 or refused to submit to a breath or blood test. Defendant promptly requested a hearing under 23 V.S.A. § 1205, and the preliminary hearing was scheduled for May 2, 2016.

¶ 5.    At the preliminary hearing, defendant requested that the court stay the automatic suspension of her license so that defendant could drive to work and transport her daughter to school. A day later, the court denied defendant's request on the record, stating that the court did not have the authority to stay the automatic suspension.

2

¶ 6.     A final hearing was scheduled for June 6, 2016.  On May 23, 2016—twenty-one days after the preliminary hearing but before the final hearing date—defendant moved for dismissal of the civil suspension hearing because twenty-one days had passed since the preliminary hearing.  According to defendant, this timeline violated 23 V.S.A. § 1205(h)(1), which required the final hearing to be held within twenty-one days of the preliminary hearing.  The State opposed defendant's motion, arguing that the controlling time frame under § 1205(h)(1) was forty-two days from the date of the alleged offense.  Because the June 6, 2016 date was within this forty-two-day timeline—although the forty-second day was June 5, 2016, the applicable rules extend the last day of the period to the first day that is not a Saturday, Sunday or legal holiday, which in this case was Monday, June 6, 2016—the final hearing was properly within the time allotted by the statute.

¶ 7.     The trial court concluded that the twenty-one-day rule was not jurisdictional and denied defendant's motion to dismiss.  In doing so, the court noted that the part of the sentence containing the twenty-one-day rule did not state any remedy for failing to comply with the deadline, but that the portion containing the forty-two-day rule had been interpreted by this Court to be jurisdictional in part because it contained a remedy.  Further, the court pointed to the phrase "in no event" in the statute referencing the forty-two-day rule, which suggested that the forty-two-day rule defined the outer limits of the timeframe and that the twenty-one-day rule was not controlling.  And finally, the court relied on State v. McQuillan, where this Court concluded that the forty-two-day requirement was not violated.  2003 VT 25, ¶ 4, 175 Vt. 173, 825 A.2d 804.  The court acknowledged that the defendant in McQuillan did not specifically raise the twenty-one-day rule on appeal, but noted that the facts were analogous because, like McQuillan, the final suspension hearing was held within forty-two days of the offense, but more than twenty-one days from the preliminary hearing.  Because of the factual similarities, the trial court concluded that McQuillan supported denying defendant's motion to dismiss.

¶ 8.     Defendant now appeals and reiterates her contention that the internal twenty-one-day rules are mandatory and jurisdictional for second or subsequent offenses.  In support, she

points to the overall structure of 23 V.S.A. § 1205, which she claims evinces a clear distinction between first-time offenses and second or subsequent offenses. Further, she argues that the statute's plain language makes the twenty-one-day rule mandatory and, if we held otherwise, the twenty-one-day rule would be mere surplusage. The State opposes this position, arguing that the Legislature did not provide a specific consequence for failing to abide by the twenty-one-day rule and that, if the twenty-one-day rule is mandatory, the forty-two-day rule is superfluous.

¶ 9. Our interpretation of a statute is de novo. State v. Therrien, 2011 VT 120, ¶ 9, 191 Vt. 24, 38 A.3d 1129. "When construing a statute, our paramount goal is to effectuate the intent of the Legislature." State v. Thompson, 174 Vt. 172, 174, 807 A.2d 454, 458 (2002). We look first to the statutory language's plain meaning and, if this language clearly expresses the legislative intent, we will enforce the statute without relying on statutory construction. Id. at 175-76, 807 A.2d at 458. If the statutory language provides "insufficient guidance to ascertain legislative intent, we look beyond the language of a particular section standing alone to the whole statute, the subject matter, its effects and consequences, and the reason and spirit of the law." Id. at 175, 807 A.2d at 458. In doing so, we may rely on maxims of statutory construction if they help achieve our primary objective of giving effect to the Legislature's intent. Id.

¶ 10. Here, along with the statutory language of § 1205, we may rely on the Legislature's response to our prior caselaw, for this is not the first time that we have interpreted the time limits present in 23 V.S.A. § 1205(h)(1). In State v. Singer, we concluded that the forty-two-day rule was jurisdictional for all violations of 23 V.S.A. § 1201 and, as a result, affirmed the trial court's dismissal of a civil license proceeding that did not comply with the forty-two-day rule. 170 Vt. 346, 749 A.2d 614 (2000). In Singer, the defendant was charged with a first offense of driving while intoxicated under 23 V.S.A. § 1201. Id. at 347, 749 A.2d at 615. The preliminary hearing to suspend his license was held on December 24, 1998; because the final hearing could not be held within forty-two days of this preliminary hearing, the trial court dismissed the civil suspension hearing based on 23 V.S.A. § 1205(h). Id. As in this case, the State argued on appeal that the time

4

limits were directive, not mandatory and jurisdictional. Id. at 348, 749 A.2d at 615. We disagreed, relying in part on the clear consequence spelled out by the Legislature in § 1205(h)(1); that is, we determined that the phrase "in no event may a final hearing occur more than 42 days after the date of the alleged offense" indicated that failure to comply with the time limits meant that no hearing could be held on the matter. Id. at 348-49, 749 A.2d at 616. We also reasoned that, if the Legislature meant the time limits to be directive and not mandatory, it would not have provided several methods for the State to justify a delay. Id. at 351, 749 A.2d at 617-18 (noting that State could justify delay "by demonstrating that it had either the defendant's consent or good cause").

¶ 11. A few months later, on the heels of Singer, the Legislature amended § 1205 by adding subsection (t). See 1999, Adj. Sess., No. 160, § 18. As described above, subsection (t) provides: "For a first offense, the time limits set forth in subsections (g) and (h) of this section are directive only, and shall not be interpreted by the court to be mandatory or jurisdictional." 23 V.S.A. § 1205(t). Plainly, this subsection was a response to Singer.[1] Just as plainly, subsection (t)'s applicability is limited to a "first offense." The ambiguity arises from the phrase "time limits set forth in subsections (g) and (h)," which encompasses both twenty-one-day rules in subsections (g) and (h) and the forty-two-day rule in subsection (h), even though the Singer court only addressed the forty-two-day rule in subsection (h).

¶ 12. For several reasons, we conclude that the Legislature, when it enacted subsection (t), intended to make the time limits in subsections (g) and (h) directive for first offenses, but mandatory and jurisdictional for second or subsequent offenses. Thus, for second or subsequent offenses, the court must comply with the twenty-one-day rule in subsection (g) and the twenty-

---

[1] In fact, the only clear conclusion that can be drawn from extensive research into the amendment's legislative history is that the State Senate was aware of Singer. See Criminal & Civil Procedures Involving Alcohol & Motor Vehicle Violations: Hearing on S.324 Before Senate Comm. on Judiciary, 1999-2000 Bien. Sess. (Vt. March 31, 2000). A great many intern hours were sacrificed to come by this knowledge.

one-day and forty-two-day rules in subsection (h), absent consent by the defendant or good cause shown, or the civil suspension hearing must be dismissed for lack of jurisdiction.

¶ 13. First, the "time limits" phrase encompasses both the twenty-one-day rule and the forty-two-day rule and, critically, references both subsections (g) and (h). See 23 V.S.A. § 1205(t). As indicated, the Legislature enacted subsection (t) in the wake of Singer and articulated when the time limits in subsections (g) and (h) should be mandatory and when they should be directive. But Singer only examined subsection (h) and the forty-two-day rule. If, as the State requests, we read subsection (t) narrowly and concluded that only the forty-two-day rule in subsection (h) was mandatory and jurisdictional for second offenses, we would ignore the Legislature's decision to include subsection (g) and to expand, in part,[2] the applicability of Singer's jurisdictional analysis to subsection (g). See Stone v. Immigr. & Naturalization Servs., 514 U.S. 386, 397 (1995) (noting basic principle of statutory construction that amendments are meant to have "real and substantial effect"). Similarly, a narrow reading of subsection (t) would render the twenty-one-day rule superfluous for second or subsequent offenses because there would be no need for the court to adhere to the twenty-one-day rule in either subsection (g) or subsection (h). Cf. State v. Taylor, 2015 VT 104, ¶ 10, __ Vt. __, 129 A.3d 660 (noting this Court strives to prevent statutory language from being redundant).

¶ 14. Second, this jurisdictional distinction between first and second or subsequent offenses comports with the overall structure of § 1205. Under 23 V.S.A. § 1205(c), first-time violators do not have their licenses automatically suspended, but second or subsequent offenders have their license automatically suspended while the civil suspension hearing is pending. Similarly, subchapter 13 includes different statutory sections governing the license suspension of first-time offenders as compared to the suspensions for second or subsequent offenders. Compare id. § 1206 (imposing ninety-day suspension for first time offense), with id. § 1208(a) (imposing

_____

[2] We recognize that subsection (t) also limited Singer by restricting the mandatory and jurisdictional time limits to second or subsequent offenses.

eighteen-month suspension for second offenses). The Legislature's enactment of 23 V.S.A. § 1205(t) parallels this differentiation between first offenses and second or subsequent offenses.

¶ 15. Most important, the Legislature's imposition of strict jurisdictional time limits for second or subsequent offenses serves a critical public purpose. Under 23 V.S.A. § 1205(e), a second or subsequent offense carries with it an automatic suspension of the violator's license, regardless of whether a civil suspension hearing is requested. In this state, where many people depend on vehicles for work and to obtain necessary goods and services, an automatic suspension of a license without a hearing may summarily cut off access to basic necessities for several months. By requiring suspension hearings for second or subsequent offenses to be held within strict time limits, the Legislature ensured that automatic suspensions would be reviewed and decided within in a timely manner while protecting the public from repeat offenders.

¶ 16. We are not swayed by the State's arguments to the contrary. First, the State's reliance on State v. McQuillan is not persuasive. 2003 VT 25, ¶ 2. In McQuillan, the sole question that this Court addressed was how court should compute the forty-two-day requirement. Id. ¶ 4 (citing Vermont Rule of Civil Procedure 6(a) and what is now Vermont Rule of Civil Procedure 80.5 and explaining that while intermediate Saturdays, Sundays, and legal holidays are counted in computing forty-two-day time period, if final day of period is Saturday, Sunday, or legal holiday, then period is extended to next working day). Because we did not consider the jurisdictional nature of the twenty-one-day rule, nor did the defendant raise the twenty-one-day rule on appeal, McQuillan does not bind our analysis under these circumstances. See id. ¶¶ 2-4. Similarly, we are not persuaded by the State's claim that, if the Legislature did intend the twenty-one-day rule to be mandatory, it would have included a consequence for violating the rule. This argument ignores the language of 23 V.S.A. § 1205(t), which specifies that the time limits for first offenses are directive and implies that the time limits for second offenses in subsections (g) and (h) are mandatory. See Smith v. Desautels, 2008 VT 17, ¶ 17, 183 Vt. 255, 953 A.2d 620 ("[W]e are mindful that specific statutory provisions generally trump more general ones."). Given that

7

mandatory time limits for second offenses serve an important purpose, we conclude that the Legislature specifically intended to ensure that the time limits were mandatory and jurisdictional for subsequent offenses. Finally, the State claims that, if the twenty-one-day requirement is mandatory for second offenses, the forty-two-day rule is superfluous. But the surplusage argument favors defendant. The forty-two-day requirement defines the outer limits of the jurisdictional time frame absent consent or good cause, while the twenty-one-day rules in subsections (g) and (h) govern the internal timing within the forty-two days. If we determined that the twenty-one-day rules were not mandatory, they would be mere surplusage. See Taylor, 2015 VT 104, ¶ 10.

¶ 17. Because we conclude that, for second or subsequent offenses, both the twenty-one-day rule in subsection (g) and the twenty-one-day rule in subsection (h) are mandatory and jurisdictional, defendant's civil suspension must be dismissed.

Reversed.

FOR THE COURT:

_____
Associate Justice

¶ 18. **DOOLEY, J., dissenting.** The majority's decision includes a simple flaw in its reasoning—namely that "the Legislature enacted subsection (t) in the wake of Singer and articulated when the time limits in subsections (g) and (h) should be mandatory and when they should be directive." Ante, ¶ 13. This is not an accurate statement. By its plain language, the Legislature articulated only when the time limits of subsections (g) and (h) should be directive. Neither this Court nor the Legislature has explicitly answered whether the twenty-one-day time limits in those subsections are ever mandatory for second or subsequent offenses. And while statutory amendments are, indeed, to be given "real and substantial effect," we should not overreach and read more into an amendment than is in fact there. See id. (quoting Stone v. Immigr.

8

& Naturalization Serv., 514 U.S. 386, 397 (1995)). For this and the following reasons, I respectfully dissent.

¶ 19. Two strong reasons support my statutory construction. First, while it is true that State v. Singer did not address whether the twenty-one-day limit at issue in this case was mandatory or directory, no one who reads the decision in Singer could believe that it was mandatory. Why is this true? Because Singer explained in detail what characteristics of a time limit are required to make it mandatory and none of those characteristics are present in the twenty-one-day time limit under the statute as it existed then and exists today. As this Court explained: "[A] statutory time limit is mandatory only if it contains both an express requirement that an action be undertaken within a particular amount of time and a specified consequence for failure to comply with the time limit." State v. Singer, 170 Vt. 346, 348, 749 A.2d 614, 616 (2000); see also State v. Skilling, 157 Vt. 647, 647, 595 A.2d 1346, 1347 (1991) (holding statute is directory when it does not contain a consequence); In re Mullestein, 148 Vt. 170, 174, 531 A.2d 890, 892-93 (1987) (holding statute governing timing only mandatory if it includes consequence). Neither of the twenty-one-day time limits in § 1205(g) and (h) contain a specified consequence for failure to comply.

¶ 20. These statutory sections are unchanged since Singer. The 2000 statutory amendment that added subsection (t), the subsection on which the majority relies, was not accompanied by changes to subsections (g) and (h). Thus, we can reach the majority's conclusion only if we can find that the Legislature intended to generally change the twenty-one-day time limits in subsections (g) and (h) to mandatory time limits. As the majority acknowledges, there is nothing in the legislative history to show such an intent. There is no record of abuse of these time limits, and no record that the overall forty-two-day limit is inadequate to ensure timely disposition of civil suspension cases. In these circumstances, more should be required than an inference from a statutory amendment that deals only with first offenses and not with the general effect of time limits.

¶ 21. My second major reason relates generally to the policy of establishing mandatory time limits. It is no coincidence that this case arises in Franklin County, ground zero for the major docket pressures caused by opioid addiction. We have written in a Franklin County case that the large increases in the number and difficulty of child protection cases has made it impossible for courts to meet, or even come close to, statutory time limits in those cases, even though the result of delay in those cases is the failure to protect children when they need it the most. See In re A.S. & K.S., 2016 VT 76, ¶¶ 10-12, __ Vt. __, 150 A.3d 197 (per curiam). The flexibility to move resources from one type of case to another has been critical to the judiciary's response to the opioid crisis. Without that flexibility, the processing of juvenile child protection cases would be further delayed, with more harm to children and their development. Increasing resources for processing child protection cases, however, necessarily means reducing resources available for other types of cases and adds to delay in processing those cases. There is no cost-free solution.

¶ 22. In some instances, the Legislature has established time limits on processing particular types of cases. Many of these are advisory because the consequences of case dismissal or mandatory relief are too extreme in relation to the likely results of delay. The most important example of such limits is those in juvenile cases—timely processing of cases is critical, but cases can't be dismissed, leaving children unprotected, if delay occurs.[3] In a few instances, the Legislature has adopted mandatory time limits on judicial action with specific consequences for failure of the judiciary to act within the time limit.

¶ 23. I recognize that the Legislature has the prerogative to establish mandatory time limits, and we have enforced those limits. We want to be sure, however, that the Legislature has understood the consequences of limiting flexibility and has knowingly and clearly done so by

---

[3] I strongly disagree with the majority that establishing time limits without consequences is a useless act, "mere surplusage." Ante, ¶ 16. Despite resource limitations, the judges and staff make every effort to meet the time limits where it is possible to do so, and these time limits become standards under which we judge the overall performance of the judiciary and upon which resource allocation decisions are made.

specifying the consequence of failing to meet the time standards. We have, therefore, interpreted time limits as mandatory only if the intent to make them mandatory is "clear," and the Legislature has specified the consequences of not meeting the time standard. See In re Mullestein, 148 Vt. at 174, 531 A.2d at 893 (holding legislative intent must be "clearly expressed"); see generally Andrizinsky v. Phillips, 97 Vt. 21, 22, 121 A. 435, 435 (1923) ("The statute contains no words negativing or denying the power to file such list after the time named; nor is there anything in the character of the act to be performed, or in the manner and mode of its performance, or in its effect as to public or private rights, from which it must be presumed that the Legislature contemplated that it better not be performed at all than at any time other than that specified in the statute. The time so specified must therefore be regarded as directory to the municipal judges and not as a limitation of their powers.").

¶ 24.    In this case, the legislative direction to make the time limits mandatory is far from clear; it is based on an inference the majority has drawn from language that does not address the situation before us, the point of my opening paragraph. See ante, ¶ 16 (stating § 1205(t) "implies that the time limits for second offenses in subsection (g) and (h) are mandatory"). Such an inference might be sufficient for other purposes, but I don't believe it meets the standard of clarity we require for a mandatory time limit. Further, no statute specifies the consequence of failing to meet the time standard; the majority has taken the consequence from a different and inapplicable time standard. No statute states that the twenty-one-day time limits are jurisdictional—as the majority holds.[4]

¶ 25.    There are two other points I believe are important; both are mentioned in the majority opinion, but neither supports the majority decision. The first is the impact of the majority decision on the forty-two-day time limit in § 1205(h). The presence of the forty-two-day overall time limit is a very clear indication that the Legislature never intended the twenty-one-day limits

_____

[4] This decision deals directly only with the twenty-one-day time limit in § 1205(h), but it is impossible to read the majority decision as not applying equally to the time limit in § 1205(g).

to be mandatory. Under the majority's decision, the forty-two-day limit is truly surplusage. No case will be dismissed under the forty-two-day limit that would not be dismissed under one or both of the twenty-one-day limits.

¶ 26. Finally, I doubt that the majority's decision will result in earlier resolution of civil suspension proceedings in the vast majority of cases. On this point, I return to the fact that this case comes from Franklin County and a court under great stress in keeping up with caseload demands because of opioid-related child protection cases. In this case, the court was able to hold an early preliminary hearing but was required to regain the time before the final hearing. In order to comply with the majority decision, it is likely that the court will take the full time complement for each component of the process to gain the full forty-two days to complete the hearing process to minimize the adverse impact on the grind of child protection cases. In the end, what should count, as Singer held, is whether the case is completed within forty-two-day time limit. I doubt that micromanaging the internal steps in the process will benefit anyone.

¶ 27. I would affirm.

¶ 28. I am authorized to state that Chief Justice Reiber joins this dissent.

_____

Associate Justice