NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 52

No. 23-AP-226

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Criminal Division |
| | |
| Eileen Ettore | March Term, 2024 |

John R. Treadwell, J.

Stacy L. Graczyk and Dennis Wygmans, Department of State's Attorneys & Sheriffs,
  Montpelier, for Plaintiff-Appellee.

Jason J. Sawyer, Attorney & Counselor at Law, P.L.C., Burlington, for Defendant-Appellant.


PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.    **COHEN, J.**   In this interlocutory appeal, defendant Eileen Ettore challenges the trial court's denial of her motion to suppress an evidentiary breath-alcohol test, which she filed in both her criminal and civil dockets.  We reverse the court's decision and remand for additional proceedings in the criminal case and for entry of judgment in defendant's favor in the civil-suspension proceedings.

## I.  Background

¶ 2.    The trial court made the following findings in ruling on defendant's motion to suppress.  In March 2022, a police officer arrested defendant on suspicion of driving under the

influence of alcohol (DUI). Defendant was processed for DUI at the stationhouse and the processing was recorded on closed-circuit television.

¶ 3. The officer read defendant language from an informed-consent form, which is a template form used by law enforcement to process DUI suspects. One portion of the form contains the implied-consent warnings set forth in 23 V.S.A. § 1202(d)(1)-(6), along with boxes to check as each item is read. See id. § 1202(d) (listing pretest disclosures of statutory information such as right to take independent test at own expense after processing, right to speak with on-call attorney to discuss approach to test, right to elect to take second test, consequences flowing from test results exceeding statutory limits, and penalty for refusal to test if person has prior DUI).

¶ 4. The officer recited—and checked as completed—the warnings, including the following: "if you submit to an evidentiary test administered with an infrared device, following your receipt of the results of that test, you have a right to a second evidentiary test administered by me using the infrared device." Defendant verbally indicated that she understood each of her informed-consent rights, waived the opportunity to speak with an on-call defense attorney before deciding whether to take the evidentiary test, and signed her name to the document representing that waiver.

¶ 5. Defendant agreed to provide a breath sample. While the Datamaster DMT machine was processing her sample but before defendant was provided with the test result, the officer said, "So, it's going to ask you if you would like to do a second one. You don't have to. That one was good enough." He asked defendant, "Do you want to provide another sample? You don't have to." Defendant replied, "No." Approximately ninety seconds later, the officer told defendant that her result was .121, which exceeded the legal blood alcohol limit of .08. The officer asked defendant if she wanted to obtain an independent blood test at her own expense. Defendant declined.

¶ 6.     The State charged defendant with DUI #2 and negligent operation of a motor vehicle, and separately opened civil-suspension proceedings. Defendant moved to suppress the breath-test result in both dockets. The court held a hearing on the motion at which the officer was the sole witness to testify. Defendant raised various arguments, including that the officer violated her implied-consent rights by asking her if she wanted a second test before informing her of the results of the first test.

¶ 7.     The court denied defendant's motion. It concluded in relevant part that the officer clearly informed defendant of her implied-consent rights before she took the evidentiary breath test, including her right to request a second breath test upon receiving the results of the first. After taking the first test, defendant was asked if she wanted to take a second test and she unequivocally declined. When defendant was subsequently informed of the result of the first test, she did not then invoke her right to request a second test.

¶ 8.     The court concluded that, under the plain language of § 1202(d), defendant's right to be informed about the ability to elect a second breath test matured at the time the officer requested an evidentiary breath sample under § 1202(a)(1). It found no evidence to suggest that the officer acted in bad faith or that defendant misunderstood her right to request a second test upon receiving the results of the first test. It saw nothing in the facts to demonstrate that defendant's ability to elect a second test had changed objectively or subjectively between the request and the opportunity to elect. The court reasoned that defendant had the opportunity to request a second test at the time she was informed of the results of the first test and did not do so. It denied defendant's motion to suppress as well as her motion for reconsideration. This interlocutory appeal followed.

¶ 9.     Defendant raises numerous arguments on appeal. We agree with her assertion that, under the plain language of 23 V.S.A. §§ 1202(d)(5) and 1203(c), law enforcement must provide

a suspect with the results of their first breath test before requiring the suspect to elect whether to take a second test. That did not occur here. Because we reverse the trial court's decision on this basis, we do not reach defendant's remaining arguments.

## II. Analysis

¶ 10. "A motion to suppress evidence presents a mixed question of fact and law." State v. Bauder, 2007 VT 16, ¶ 9, 181 Vt. 392, 924 A.2d 38. We will "uphold the trial court's factual findings absent clear error," and "we review the trial court's conclusions of law de novo." Id. (quotation omitted). The court's factual findings are largely unchallenged. Our interpretation of 23 V.S.A. § 1202(d) and 1203(c) presents a legal question that we review de novo.

¶ 11. While motorists on Vermont highways "impliedly consent to a breath test" if they are suspected of driving under the influence, they are afforded protections by statute, "referred to as 'implied consent rights.' " State v. Coburn, 2006 VT 31, ¶ 10, 179 Vt. 448, 898 A.2d 128. "Among these are the warnings listed in 23 V.S.A. § 1202(d), which are to be given by the arresting officer" at the time an evidentiary breath test is requested. Id.

¶ 12. As indicated above, an officer must inform a suspect, among other things, that:

> A person who is requested by a law enforcement officer to submit to an evidentiary test administered with an infrared breath-testing instrument may elect to have a second infrared test administered immediately after receiving the results of the first test.

23 V.S.A. § 1202(d)(5). Section 1203(c) similarly provides that "[a] person tested with an infrared breath-testing instrument shall have the option of having a second infrared test administered immediately after receiving the results of the first test." We have recognized that "the second test serves the obvious purpose of verifying the accuracy of the first." State v. Spooner, 2012 VT 90, ¶ 15, 192 Vt. 465, 60 A.3d 640.

¶ 13. In interpreting these laws, we strive to implement the Legislature's intent and "[t]he definitive source of legislative intent is the statutory language, by which we are bound unless it is

4

uncertain or unclear." In re Bennington Sch., Inc., 2004 VT 6, ¶ 12, 176 Vt. 584, 845 A.2d 332 (mem.). We assume the Legislature intended the plain and ordinary meaning of the language it used, State v. LeBlanc, 171 Vt. 88, 91, 759 A.2d 991, 993 (2000), and "we will not read words into a statute that are not there, unless it is necessary in order to make the statute effective," State v. Hale, 2021 VT 18, ¶ 14, 214 Vt. 296, 256 A.3d 595 (quotation omitted) (alteration omitted).

¶ 14. We conclude, based on the plain language of the laws above, that the Legislature clearly intended that suspects possess the necessary information to make an informed decision about the exercise of their statutory rights. This gives meaning to the right. See State v. Sherwood, 174 Vt. 27, 31, 800 A.2d 463, 466 (2002) (recognizing that exercise of right set forth in 23 V.S.A. § 1202(c) must "be meaningful"). Under the statute, a police officer has an affirmative obligation to provide the results of the first test to a suspect. The law does not require suspects to request these results. The statutory trigger for the exercise of the right to a second test is receipt of the results of the first test. This implements the verification purpose of the second test. Until one knows the results of the first test, there is nothing to verify.

¶ 15. This interpretation makes sense. Without the results of the first test, a suspect cannot make an informed choice about whether additional verification is needed. The suspect might choose to take a second test, unaware that the first did not demonstrate impairment. Alternatively, they might decline a second test, unaware that the first test showed impairment. A suspect who has made the weighty decision to submit to an evidentiary breath test is entitled to make a knowledgeable decision about whether to exercise their statutory right to a second breath test. See State v. Lynaugh, 158 Vt. 72, 75, 604 A.2d 785, 786-87 (1992) (recognizing that "the decision whether to take a breath test should not be lightly decided" (quotation omitted)).

¶ 16. This interpretation gives meaning to the right, implements the plain language used by the Legislature, and serves the law's purpose. It is also consistent with the Vermont Criminal

Justice Training Council's implementation of 23 V.S.A. §§ 1202(d)(5) and 1203 in the standard DUI Affidavit-Infrared. That form prompts the officer to provide and note the results of the first test before asking the suspect if they would like a second test.

¶ 17.    The process laid out by statute was not followed here. In this case, the officer asked defendant if she wanted a second test before she was provided the results of the first test. After defendant completed the first test, the officer explained that the machine would "ask if you would like to do a second one," but "[y]ou don't have to"; "[t]hat one was good enough." He asked again if defendant wanted to take a second test and reiterated "you don't have to." Defendant then declined to take the second test. The officer's conduct and advice were inconsistent with the implied-consent law, and without the test results, defendant could not make a fully informed decision about whether to request a second test. Although the officer provided defendant the results of her first test about a minute and a half after she declined a second test, she had already been asked for her election as to the second test and was not asked again. Because this occurred, it was not defendant's burden, when she was subsequently provided with the results, to tell the officer she had changed her mind and now wanted to elect a second test. She was asked to decide about a second test prematurely, in a way that was inconsistent with the statute, and her election had been made. The trial court erred in concluding that defendant's ability to elect to take a second test did not "change[] either objectively or subjectively between the request and the opportunity to elect."[1]

¶ 18.    Because the implied-consent procedure was not followed here, defendant's motion to suppress should have been granted. While the officer did not act in bad faith, his conduct violated defendant's right to make an informed decision in response to the officer's request as to

---

[1] We base our conclusion on the particular facts of this case and do not hold, as a matter of law, that police officers must ask suspects in each case if they want to take a second breath test.

whether she wanted a second test. We conclude that this warrants suppression. See State v. Vezina, 2004 VT 62, ¶¶ 6, 8, 177 Vt. 488, 857 A.2d 313 (mem.) (stating that suppression is appropriate where there is a "deliberate deprivation of statutory rights" because it would prevent "the State [from] tak[ing] advantage of its own violation of the law"); see also State v. McCrossen, 385 N.W.2d 161, 170 (Wis. 1986) (concluding that "suppression of blood alcohol test results" was appropriate "sanction for violating a defendant's statutory right to an alternative blood alcohol test," recognizing that "second test does help assure fairness," "legislature intended the second test as a check on the reliability of a first test," and court would "strictly enforce right to a second test").[2] Defendant had a right under the statute to make an informed decision about whether to take a second test and it is unknown what a second test might have revealed, creating an irreparable harm. Under these circumstances, the State should not be allowed "to take advantage of its own violation of the law." Vezina, 2004 VT 62, ¶ 6.

¶ 19. While not binding on this Court, we note that numerous trial judges have reached a similar conclusion. See, e.g., State v. Jerome, Nos. 1010-8-19 Bncr, 58-8-19 Bncs (Vt. Super. Ct. Oct. 14, 2020) (Valente, J.) (concluding that defendant entitled to favorable decision in civil-suspension proceedings and suppression of evidentiary breath test where officer failed to inform suspect of results of his first evidentiary test before informing him of right to second evidentiary test) (citing cases including State v. Lussier, Nos. 661-6-09 FrCr, 60-5-09 FrCs (Vt. Super. Ct. Oct. 8, 2009) (Kupersmith, J.) (suppressing evidentiary breath tests where defendant initially declined second test before learning of first result).

---

[2] We have concluded that suppression can be an appropriate remedy for a violation of the law in the absence of bad faith. See, e.g., State v. Garvey, 157 Vt. 105, 106, 595 A.2d 267, 268 (1991) (concluding that suppression warranted in civil-suspension refusal case where police officer attempted to contact numerous attorneys on DUI defendant's behalf as required by law but was unsuccessful).

¶ 20.    Mindful of the important rights at stake, and the critical need for informed decisionmaking recognized by the Legislature, we reverse the trial court's decision in this case.[3] Defendant is therefore entitled to judgment in her favor in the civil-suspension proceedings and we remand the civil matter for entry of such judgment.  See 23 V.S.A. § 1205(h)(1)(E) (recognizing that court must determine if State complied with requirements of § 1202 at final civil-suspension hearing); Spooner, 2012 VT 90, ¶ 16 (explaining that "civil-suspension statute clearly calls on the trial judge to review . . . compliance with § 1202," and judgment in defendant's favor warranted if State "fail[s] to carry its burden to establish compliance with § 1202").  Granting the motion to suppress does not dispose of the two pending criminal charges against defendant, however, and the criminal case is thus remanded for additional proceedings.  See State v. Gilman, 173 Vt. 110, 118, 787 A.2d 1238, 1244 (2001) (reaching similar conclusion).

Reversed and remanded for additional proceedings.

FOR THE COURT:

_____
Associate Justice

¶ 21.    **CARROLL, J., dissenting.**    In considering legislative intent expressed in unambiguous language, our precedents, credibility determinations made by the trial judges, and the arguments presented to us on appeal, I come to a different conclusion than the majority.  None of these support the majority's new, bright-line rule for suppressing an evidentiary breath test under 23 V.S.A. § 1202(d)(5).  I respectfully dissent.

---

[3]    Following oral argument, defendant filed a supplemental brief, which the State opposed.  This supplemental brief was not authorized under the rules and we have not considered it in reaching our decision.

¶ 22.   Our overriding goal when interpreting a statute is to give effect to the Legislature's intent.  State v. Deyo, 2006 VT 120, ¶ 14, 181 Vt. 89, 915 A.2d 249.  We presume that the Legislature expresses its intent using plain and ordinary language.  T.C. v. L.D., 2020 VT 19, ¶ 4, 211 Vt. 582, 229 A.3d 77.  If that plain, ordinary language is unambiguous, our inquiry ends, and we implement the statute as written.  Id.

¶ 23.   The relevant language in the informed-consent statute is as follows:

> At the time a test is requested, the person shall be informed of the following statutory information: . . .
>
> A person who is requested by a law enforcement officer to submit to an evidentiary test administered with an infrared breath-testing instrument may elect to have a second infrared test administered immediately after receiving the results of the first test.

23 V.S.A. § 1202(d)(5).  The testing statute contains substantially the same language.  See id. § 1203(c) ("A person tested with an infrared breath-testing instrument shall have the option of having a second infrared test administered immediately after receiving the results of the first test.").  These statutes together make two things clear.  First, before the police officer administers the first test, the officer must warn the suspect that the suspect can elect to take a second test immediately following receipt of the first test result.  Second, a police officer must not intentionally deprive a suspect of the right to take a second test immediately following receipt of the first test result.

¶ 24.   Contrary to the majority's holding, neither statute requires an officer to ask a suspect after the first test is administered if they would like to take a second test.  Ante, ¶ 14.  The verb "elect" in § 1202(d)(5) gives the suspect the choice to take another test but puts no duty on the police officer to prompt the suspect to make that choice.  See Elect, Merriam-Webster Online Dictionary [https://perma.cc/EM9C-EBHY] (defining transitive verb form of "elect" as "to make a selection of" or "to choose (something, such as a course of action) especially by preference").  Unlike in § 1202(d), the Legislature did not use words such as "ask," "inquire," "request," or the

9

like in either §§ 1202(d)(5) or 1203(c). See 23 V.S.A. § 1202(d) ("At the time a test is <u>requested</u>, the person <u>shall</u> be informed of the following statutory information." (emphasis added)). To the extent that the Legislature intended such a requirement but did not expressly say so, our rule is to decline to add extra words into unambiguous language. <u>State v. Hale</u>, 2021 VT 18, ¶ 14, 214 Vt. 296, 256 A.3d 595 ("It is a well-settled principle of statutory construction that we will not read words into a statute that are not there, unless it is <u>necessary</u> in order to make the statute effective." (quotation and brackets omitted)).

¶ 25. The majority reasons that § 1203(c)'s "shall have the option of having a second infrared test administered immediately after receiving the results of the first test" means that the DUI processing officer—Springfield Police Officer Perkins—was required to ask defendant about her decision to take a second test after disclosing the first test result. <u>Ante</u>, ¶ 14. I disagree. Read together with § 1202(d), "shall have the option" means that a law-enforcement officer must instead not intentionally deprive a suspect of the option at the appropriate time. See <u>State v. A.P.</u>, 2021 VT 90, ¶ 12, 216 Vt. 76, 268 A.3d 58 ("We do not read statutory language in isolation; we read and construe together the whole and every part of the statute, together with other statutes standing in pari materia with it, as parts of a unified statutory system." (quotation omitted)); <u>State v. Spooner</u>, 2012 VT 90, ¶ 15, 192 Vt. 465, 60 A.3d 640 (construing informed-consent statute and civil-suspension statute in light of each other).

¶ 26. The majority's focus on informed decisionmaking goes beyond what our precedents require. <u>Ante</u>, ¶¶ 15, 17-18. As we have repeatedly held, "all that is required to satisfy the [informed-consent] right is that the warning convey" the provisions in § 1202(d). <u>State v. Coburn</u>, 2006 VT 31, ¶ 11, 179 Vt. 448, 898 A.2d 128 (concluding that provision in informed-consent form advising of consequences of refusing to take evidentiary test "adequately conveys the information required" under statute, and defendant's argument that warning was too confusing

10

lacked merit in part because defendant contemporaneously confirmed that he understood warning); see State v. Lynaugh, 158 Vt. 72, 74, 604 A.2d 785, 786 (1992) ("Defendant received all the advice required by § 1202(d), and we decline to require more.").

¶ 27. In my view, this case is controlled by State v. Vezina, 2004 VT 62, 177 Vt. 488, 857 A.2d 313 (mem.). There, the defendant elected to take a second test but the Datamaster DMT machine malfunctioned and a second test was never obtained. The defendant was appropriately advised of his right to obtain an independent test at his own expense, which he declined.[4] He moved to suppress the result of the first test. We refused to extend the suppression remedy to a violation of § 1202(d)(5) because, unlike the statutory right to counsel in (d)(4), a violation of (d)(5) does not result in the State capitalizing on its own violation of the law. Id. ¶ 6. We explained that an "inability to produce a second test" does not compare "with the irreparable harm caused by the State's actions in denying a defendant's right to counsel during DUI processing, particularly in light of defendant's ability to challenge the instrument's reliability," including by seeking independent testing. Id. We held that, at minimum, a defendant would have to demonstrate bad-faith conduct by the police officer and prejudice to prevail on a suppression motion involving an alleged violation of § 1202(d)(5). Id. ¶ 8. Our holding in Vezina is directly applicable here:

> We discern no reason to extend the remedy of suppression where . . . there is no evidence that performance of the instrument affected the validity of the first [blood alcohol content] result, there is no claim of bad faith on the part of the officers, and defendant has been properly advised of his right to additional independent testing.

Id. Here, defendant has not challenged the validity of the first test. The court found that Officer Perkins did not act in bad faith (defendant does not challenge that finding on appeal), and defendant was apprised of her right to additional testing.

---

[4] Here, Officer Perkins appropriately advised defendant that she could take an independent test at her own expense, which she also declined.

¶ 28. It is because defendant has not challenged the validity of the first test that State v. Spooner, relied upon by the majority, has limited bearing on this case. 2012 VT 90, 192 Vt. 465, 60 A.3d 640. In Spooner, the defendant elected to take a second test after learning the first test result was .101. The second test returned a "standard out of range" reading, and the third test reported an "invalid sample." Id. ¶ 3. The fourth test result was .109. The State sought civil suspension of the defendant's license. We affirmed the trial court's dismissal of the civil-suspension complaint because the officer had failed to operate the Datamaster DMT machine in accordance with the Department of Health's operational manual by continuing to test after the machine experienced a "fatal error." Id. ¶ 12. We agreed with the trial court that, in the absence of the valid and reliable second test result that the defendant had requested, the State could not prove a necessary element required by the civil-suspension statute. Id. ¶¶ 13-14 (citing 23 V.S.A. § 1205(h)(1)(D)).

¶ 29. We explained in Spooner that the second test serves the "obvious purpose" of confirming the reliability of the first test. Id. ¶ 15. But the necessary corollary to that statement is that a person must actually elect to take a second test. Id. ("[R]ead in light of one another, [the civil-suspension statute and the informed-consent statute] dictate that if a person elects to have a second test, the methods of that test are reviewable for validity and reliability by the court at a final civil-suspension hearing." (emphasis added)). If reliability of the first test was always in issue in every case, then there would be no need to provide an election to take a second test, and that provision would be mere surplusage. See State v. Taylor, 2015 VT 104, ¶ 10, 200 Vt. 96, 129 A.3d 660 ("We do not construe the statute in a way that renders a significant part of it pure surplusage." (quotation omitted)). In Spooner, we distinguished Vezina, explaining that "a valid second test was not an element of the criminal drunk-driving charge" at issue in Vezina as it was

12

in Spooner, and that Vezina involved the admissibility of the breath test, not the absence of a sufficiently reliable second test. 2012 VT 90, ¶ 17. Spooner does not help defendant here.

¶ 30. Defendant has not attempted to show that she was prejudiced by her own decision to stop at the first test or that the first test result was faulty. See State v. Roya, 174 Vt. 451, 452-53, 807 A.2d 371, 373 (2002) (explaining rule that defendant must introduce some evidence of prejudice to warrant suppression of test result); State v. Hamm, 157 Vt. 666, 667, 599 A.2d 1048, 1049 (1991) (mem.) (explaining that where defendant challenging civil suspension on basis that police officer failed to inform defendant of statutory right to counsel, defendant bore "burden of production on the issue of prejudice, that is, [defendant] had to introduce some evidence that any deficiency in the advice he received was prejudicial"); State v. West, 151 Vt. 140, 142, 557 A.2d 873, 875 (1988) (requiring defendant to bear burden of proving prejudicial error and refusing to suppress test where defendant was given erroneous information concerning penalties for refusal to take test); State v. Curylo, No. 2014-429, 2015 WL 3756816, at *3 (Vt. June 12, 2015) (unpub. mem.) [https://perma.cc/5W2P-DZ57] (holding that defendant's argument to suppress test on grounds that officer acted in bad faith failed because record supported trial court's findings that officer acted in good faith and defendant did not demonstrate prejudice).

¶ 31. Nonetheless, the majority makes the prejudicial-error argument for defendant, holding that defendant had a right to a second test because "it is unknown what a second test might have revealed, creating an irreparable harm." Ante, ¶ 18. We held precisely the opposite in Vezina: that suppression was not warranted where the defendant actually requested a second test, and a second test could not be produced. 2004 VT 62, ¶ 8. I cannot square up how this case falls outside Vezina's framework.

¶ 32. The majority's explanation that Officer Perkins, even in the absence of bad faith, deliberately deprived defendant of a right to a second test effectively overrules Vezina. Ante, ¶ 18.

13

In Vezina, we held that there was no evidence of a deliberate deprivation of statutory rights; in other words, there was nothing to suggest that the State was capitalizing on its own violation of the law. Id. (citing State v. McCrossen, 385 N.W.2d 161 (Wis. 1986), where defendant requested second test not believing result of first test, but police officers kept defendant in jail, never administered second test, and never informed defendant she could be released to get independent, second test). The majority's holding, analogizing this case to McCrossen for the proposition that the State should not be allowed to capitalize on its own violation of law, rewrites our implied-consent case law. In my view, Vezina would no longer be good law in light of the majority's reasoning.

¶ 33. Indeed, I believe that the majority's new bright-line rule for suppression irrespective of whether the suspect can demonstrate bad faith and prejudice will undermine significant portions of our implied-consent precedents. In addition to Vezina, Coburn does not appear to survive this case. See 2006 VT 31, ¶ 11 ("Because the right to advisement under 23 V.S.A. § 1202(d) goes above and beyond any due process requirement of statutory clarity (in that the majority of suspects receive no warning whatsoever before committing a crime, but are nonetheless held accountable to criminal sanctions prescribed in Vermont's statutes), all that is required to satisfy this right is that the warning convey the information listed in 23 V.S.A. § 1202(d).)." Lynaugh does not appear to survive this case. See 158 Vt. at 76, 604 A.2d at 787 (reversing suppression order where defendant was adequately apprised of consequences of submitting to breath test under § 1202(d)). State v. Nemkovich does not appear to survive this case. See 168 Vt. 8, 13, 712 A.2d 899, 902 (1998) (reversing suppression order where trooper read defendant implied-consent rights from processing form and defendant acknowledged that he understood his rights). West does not appear to survive this case. 151 Vt. at 142, 557 A.2d at 875 (requiring defendant to bear burden of proving prejudicial error and refusing to suppress test where

14

officer correctly disclosed information on informed-consent form but also gave defendant erroneous information).

¶ 34.   In sum, as even the majority concedes, § 1202(d)(5) and § 1203(3) required that Officer Perkins advise defendant of her right to take a second test when Officer Perkins requested the first evidentiary test. There is no dispute Officer Perkins advised defendant of this right. But now, for the first time, the majority holds that appropriately disclosing the implied-consent warnings under the statute is not enough. Instead, elevating form over substance, it requires the officer to again ask the suspect by rote about a second test after disclosing the results from the first test. After today, a defendant can now colorably argue to suppress a test result where the officer did not readvise her that she may be subject to criminal charges or civil suspension if the first test result was over the legal limit, § 1202(d)(3), or the officer did not readvise her of her right to get an independent test, § 1202(d)(4), or did not readvise her of a location to get an independent test, id. Moreover, for the first time, the majority does not require a showing of bad faith or prejudice to suppress a breath test.[5] Indeed, the majority no longer requires a defendant to even argue bad faith or prejudice to suppress a breath test. Cf. Rowe v. Brown, 157 Vt. 373, 379, 599 A.2d 333, 337 (1991) ("Issues not raised on appeal are deemed waived.").[6] Instead, for the first time,

_____

[5] The majority correctly cites State v. Garvey, 157 Vt. 105, 595 A.2d 267 (1991), for the proposition that we have not required bad-faith conduct to suppress a breath test in every case. Ante, ¶ 18, n.2. However, Garvey involved the inability of the State to provide legal counsel to a DUI suspect. As we explained in Vezina, "the inability to produce a test sequence"—or here, a decision not to take a second test—does not compare "with the irreparable harm caused by the State's actions in denying defendant's right to counsel during DUI processing." 2004 VT 62, ¶ 6. Defendant waived her right to counsel, and she does not otherwise contend that the State denied her the right to legal counsel during the DUI processing.

[6] Even if I agreed with the majority about what § 1202(d)(5) and § 1203(c) mean, I would still not join its opinion today because defendant has not presented arguments sufficient to grant the relief she seeks. This Court is bound by the trial court's credibility determinations. See State v. Arrington, 2010 VT 87, ¶ 9, 188 Vt. 460, 8 A.3d 483 (explaining that Supreme Court defers to "trier of fact's decision to credit a particular witness" (quotation omitted)). I firmly reject the notion that we can ignore the fact that defendant has not challenged the court's finding of good-

15

suppression is mandatory if the officer deviates in the slightest way from reminding a defendant what was already disclosed to the defendant and to which the defendant already affirmatively acknowledged.[7] I submit that this result goes beyond the relevant statutes, our precedents, the trial court's credibility determinations, and defendant's own arguments on appeal.

¶ 35.   I must respectfully dissent.

¶ 36.   I am authorized to state that Justice Waples joins this dissent.

_____

Associate Justice

---

faith conduct <u>and</u> has not briefed an argument describing how she was prejudiced by her decision to stop at the first test.  Moreover, defendant has not argued that the Court should abandon its longstanding requirements that defendants must at least show bad-faith conduct and prejudice to suppress evidentiary breath tests.  See <u>Rowe</u>, 157 Vt. at 378-79, 599 A.2d at 336-37.

[7] I note that Officer Perkins asked defendant about a second test ninety seconds before she received the first test result.  That this means the first test result will be suppressed because Officer Perkins should have waited ninety more seconds before doing so, pointing up the unworkability of the majority's new rule.  At the very least, there should be some assessment of the totality of the circumstances in reviewing these suppression motions.  See <u>Vezina</u>, 2004 VT 62, ¶¶ 6-8 (citing some factors courts may consider in evaluating suppression of breath test under § 1202(d)(5), including presence of bad-faith conduct, prejudicial error, whether suspect obtained independent test, whether suspect challenged result of first test, and whether suspect was adequately apprised of all rights under § 1202(d)).